### STANFORD UNIVERSITY BOOK STORE v. HELVERING, Com'r of Internal Revenue.

No. 6529.

United States Court of Appeals for the District of Columbia.

Decided April 6, 1936.

Frank K. Nebeker, of Washington, D. C., for petitioner.

Frank J. Wideman, Norman D. Keller, Howard P. Locke, Robert H. Jackson, G. W. Brooks, and Sewall Key, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB and GRONER, Associate Justices.

MARTIN, Chief Justice.

This case relates to certain alleged deficiencies in income and excess profits taxes for the years extending from August 31, 1918, to August 31, 1928, which were assessed upon petitioner by the Commissioner of Internal Revenue in the aggregate sum of $6,304.33.

The case is governed by section 103 (6) of the Revenue Act of 1928, 26 U.S.C.A. § 103 (6) and note, and corresponding provisions of prior acts in effect during the years in question (Acts 1918, 1921, § 231, 40 Stat. 1076, 42 Stat. 253, and Acts 1924, 1926, § 231, 26 U.S.C.A. § 103 and note), reading as follows:

"§ 103. Exemption from tax on corporations. The following organizations shall be exempt from taxation under this title [chapter]: * * *

"(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational pur-

poses, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual."

The petitioner is a co-operative association organized in 1897 in the state of California, for the purpose of carrying on "a general mercantile business, for the accommodation of the students and faculty of Leland Stanford Junior University." Membership in the association is restricted to members of the faculty of the university, who pay a membership fee of $1, which is returned to the member when his membership in the association is terminated. No dividends or interest are paid upon the membership fee.

Officers and directors of the association are selected from its membership, and are in charge of its business, which is conducted by a manager selected by them. The officers and directors serve without compensation but the manager is paid a stipulated salary. During the years in question the association operated two stores on the campus of the university. One of these was in a building which the association owned, situated upon land for which ground rent was paid to the university, while the other was in a building rented from the university at $75 per month. Both stores were about a mile from the nearest town, Palo Alto, and during the period here involved no competing business was conducted in that town. The operation of the business was intended to be, and in fact was, a convenience to the students and faculty of the university.

The association deals in textbooks, stationery, engineering, laboratory, and art supplies and equipment, also notebooks, pens, typewriters (which it also rents), desk lamps, and other miscellaneous articles used by students. It also fills special orders for personal stationery, dance programs, emblems, and books. The textbooks which are sold are stocked after inquiry among the faculty members as to the expected requirements of the classes of the university. The major part of the association's business is done with students and members of the faculty of the university, but sales are also made to other persons, including tourists, and visiting parents, but this is a small part of its total business. The association makes its sales of merchandise at list or current retail prices, and with each sale it issues a cash receipt, which may be turned in by the purchaser at a later date for rebate. At certain periods the total profits realized by the association are determined, and from this total the association's operating expenses are deducted. Out of the net profits of the association rebates are made to purchasers who turn in the cash receipts issued to them at the time of their purchases. When a purchaser files his receipts with the association, the rebate is made to him regardless of the character of the article of merchandise he purchased, but if receipts are not filed, no rebate is made. During the years 1919 and 1921 to 1928, inclusive, 10 per cent. annually of gross sales was paid in rebates. There were no rebates in 1918, and in the year 1920, 5 per cent. was paid by the association. Any excess over operating expenses and rebates paid by the association was set aside in a surplus for working capital and emergency requirements, such as unexpected loss by fire, earthquakes, etc.

During the year 1926, the only year for which detailed evidence appears in the record, rebates of sales made in all departments of the association's stores amounted to $4,813.37, approximately $1,500 of which was from the sale of textbooks, over $3,000 on miscellaneous supplies, and the balance on stationery; and there was transferred to the surplus account a net profit of $26,546.21. No part of the earnings or assets of the association has been paid to any individual at any time except by rebates or for services actually rendered, nor has any part of the earnings or assets ever been paid to the university or any other organization exempt from taxation. The association makes an annual report of its business to the university.

The by-laws of the association provide that the profits "shall be added to the common property of the Association," and that in the case of its dissolution or the discontinuance of its business "the net assets may, by the vote of two-thirds of the members, be transferred to an organization with purposes similar to those of the Bookstore, or applied to any educational, charitable, or benevolent institution or purpose," and this provision was in effect throughout the entire taxable periods now in question. The by-laws also provided for amendment by a majority of the members, after ten days' notice of such proposed amendment.

The association did not pay income or excess profits taxes for the years in question, because of a prior ruling by the Commissioner of Internal Revenue that it was exempt therefrom, but in 1930 deficiencies were assessed against it for such years, whereupon this appeal was taken by the association to the Board of Tax Appeals. It was contended by the association before the Board that the Commissioner of Internal Revenue, who, in 1930, assessed the deficiency, was bound by the prior ruling of his predecessor, and moreover that it was a corporation organized under section 103 (14) of the Act of 1928, 26 U.S.C.A. § 103 (14) and note, to hold title to property and turn over the income therefrom, less expenses, to an organization which was exempt. The board, in an opinion reviewed by the full board, held against the association.

Thereafter, and after the entry of the board's decision, in which the deficiencies were determined by it as assessed by the commissioner, the association filed a motion for special findings of fact nunc pro tunc, to which the commissioner objected. The board vacated and set aside its decision, and later an amended motion for special findings of fact nunc pro tunc, not objected to by the commissioner, was filed and was granted. The board then reinstated its former decision. Thereafter the association moved the board to strike from its files and from the record in the case the amended motion for special findings of fact nunc pro tunc, which had been granted, predicating its motion on the contention that counsel, in making the motion which was granted, was not authorized to act as he did. This motion was denied by the board, and we find no error in the decisions of the board upon questions of procedure.

We may say without extended discussion that the contention that the Commissioner of Internal Revenue was estopped from reviewing the question by reason of the ruling of his predecessor, and also its claim to exemption under section 103 (14), cannot be sustained.

In order to sustain the other claim for exemption presented by the association it must be established that the association is a corporation "organized and operated exclusively for * * * educational purposes * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual." 26 U.S.C.A. § 103 (6) note.

We think that the record conclusively shows that the association is not "a corporation organized and operated exclusively for educational purposes." It must be remembered that the association is not, in contemplation of law, a division or part of the university. The university as such does not own any interest in the association, is not responsible for its debts, is not entitled to any part of its earnings, and takes no part in conducting and managing its affairs. The two institutions are separate legal entities and therefore the attributes of the university cannot be attributed to the association, nor can the latter claim to be an educational institution because the university is such. The members of the faculty of the university, as such, were not charged with the duty of conducting the affairs of the association.

It is provided by the articles of incorporation under which the association was created that it is organized for the purpose of carrying on "a general mercantile business for the accommodation of the students and faculty of Leland Stanford Junior University." The power of conducting a "general mercantile business" would permit the association to deal in merchandise other than such as is related to educational purposes, but which, nevertheless, might accommodate the students and faculty of the university.

The association itself did not take part in the instruction of students of the university. It employed no teachers and offered no courses of study. The mere business of selling books or other "general merchandise" on a college campus does not connote an "educational purpose." The university itself was the sole institution which engaged in the instruction and education of its students and it alone would be entitled to the exemption permitted by the statute.

We are also convinced that the earnings or profits of the association were in part to be paid to private individuals, thereby likewise excluding it from the exemption in question, for when purchases were made by any person the price paid for an article was the list price in full. At the same time a so-called "cash receipt" was given to the customer for the amount of his purchase. At stated periods an ac-

counting was taken by the association to determine the profits accrued during the period in which the purchase was made. The cash receipts held by the purchaser were then redeemed in a sum fixed by the association. The amount so paid appears under the name of "dividends" or "rebates" in the transactions of the association, and it was a part of the profits of the association, and thereby inured to the benefit of a private individual.

Accordingly, neither requirement of the statute is satisfied by the organization or operation of the association necessary to entitle it to the benefit of the exemption which it claims in this case. We therefore affirm the decision of the Board of Tax Appeals.

Affirmed.

VAN ORSDEL and STEPHENS, Associate Justices, took no part in the consideration or decision of this case.

GRONER, Associate Justice (dissenting).

The question for decision is whether taxpayer is within the exemption found in section 103 (6) of the Revenue Act of 1928 (26 U.S.C.A. § 103 (6) note). In my opinion it is. I reach this conclusion on undisputed evidence which establishes clearly, as I think, that the corporation was organized and is operated exclusively for educational purposes and that no part of its net earnings inures to the benefit of any shareholder or individual. The corporation was organized and is operating with a single object. That object was and is to furnish books and school supplies to the students and teachers in Stanford University as cheaply as might be done with due regard to contingencies and emergencies. I cannot doubt that an organization endowed by some philanthropist to supply free, or at a reduced price, textbooks to college students would be considered as serving an "educational purpose," and I reject wholly the suggestion of the government that textbooks are not in themselves educational without the assistance of an instructor. Where, as here, an organization works hand in hand with an educational institution in supplying cheap educational facilities, it is discharging a function so intimately connected with the common end that it is incorrect to say it is not serving an educational purpose.

The taxpayer here is not a private, independent corporation. To all practical intents and purposes it is a part of the university. It is controlled by its faculty. Its books and school supplies are purchased in the light of class-room needs, and 99 per cent. of its sales are to students who use the things they purchase in their class rooms. The obvious purpose of its formation was to assist the university in providing cheap education by supplying cheap textbooks, and I think it is of no consequence that its charter authorized it to carry on a general mercantile business. It never did, and never was anything else than a facility of the university in educational lines.

The question is interesting because it involves a principle which I think should have a liberal rather than a narrow construction. No cases in point are cited by either side. One state case—not cited —but which I think is persuasive, is worth noticing. There a publishing house was incorporated for the purpose of carrying on a general bookselling, publishing, and printing business. In operation, however, it was controlled by the Lutheran Synod, a religious tax-exempt corporation. The publishing house printed and distributed religious pamphlets and turned over the profit to the synod which used it for religious purposes. The Wisconsin Supreme Court refused to pass on the question whether the publishing house was a religious organization, but held that it was tax exempt on the ground that it was discharging an educational and benevolent purpose. Northwestern Pub. House v. Milwaukee, 177 Wis. 401, 188 N.W. 636. The case is interesting and, I think, reasonably in point because it shows a refusal to accept, as the board did, the statement of the purposes of incorporation as conclusive. In its result it is a holding that a corporation actually performing an educational service, with no purpose of private or individual gain, is within the spirit of the tax exemption statutes.

I am unable to agree with the opinion of the court that the rebate system is a distribution of earnings inuring to the benefit of an individual. The purpose of the system is obvious. The organization cannot anticipate its actual needs and expenses during the year, but whenever it sells to a student a textbook, it says to him: The price charged is subject to rebate to the extent of the surplus earnings

714

(less a contingent fund) to be ascertained and returned at the end of the year. It obtained its funds from the sale to students and faculty members of school room necessities. If the total fund exceeded the cost of the supplies and the cost of operation, and the small retained contingent fund, the difference was returned to the purchasers. In my opinion there is no difference between this and the sale to the students in the first instance at wholesale prices, plus a small estimated excess to cover expenses. The contingent fund of which I have spoken was reserved for emergencies such as earthquake and fire, and the by-laws of the corporation show clearly that this fund at dissolution was expected to pass to some charitable or educational organization.

From beginning to end, the plan shows that there was not in contemplation an accumulation or distribution of profits, but that the purpose was educational.

I am for reversing the order of the Board of Tax Appeals.