## NATIONAL RIFLE ASS'N OF AMERICA v. YOUNG et al.
### No. 8224.

United States Court of Appeals for the
District of Columbia.
Argued Jan. 8, 1943.
Decided March 8, 1943.

Mr. Charles V. Imlay, of Washington, D. C., for appellant.

Mr. Vernon E. West, Principal Asst. Corporation Counsel, D. C., of Washington, D. C., with whom Mr. Richard B. Keech, Corporation Counsel, D. C., and Messrs. Charles H. Burton, Counsel, and Boynton P. Livingston, Asst. Atty., District Unemployment Compensation Board, all of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and VINSON and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

Appellant association, a New York corporation which has its principal office in the District of Columbia, seeks refund of contributions paid under protest to the District of Columbia Unemployment Compensation Board. The principal question is whether appellant is "organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes" within the meaning of an exemption clause in the Unemployment Compensation Act.[1] The District Court held that appellant is not within the exemption and dismissed the complaint on the Board's motion.

▮ Compulsory unemployment contributions are taxes.[2] Exemptions from taxation in general,[3] and from this sort of taxation in particular,[4] are strictly construed.

▮ "In order to determine the status of a corporation and to ascertain the purposes for which it was incorporated, recourse must be had * * * to its charter and the statute under the authority of which it was framed."[5] Appellant's certificate of incorporation states: "The object for which said association is formed, is the improvement of its members in marksmanship, and to promote the introduction of the system of aiming drill and rifle practice as part of the military drill of the National Guard of this and other states, and for these purposes to provide a suitable range or ranges in the vicinity of the City of New York." We have held that some of these objects may be "purely for sport and recreation."[6] In 1871, when appellant was organized, a New York "act for the incorporation of benevolent, charitable, scientific and missionary societies" authorized organization for "benevolent, charitable, scientific or mis-sionary purposes."[7] Appellant's incorporators did not organize under that act. They chose, instead, an "act for the incorporation of societies or clubs for certain social and recreative purposes," which authorized organization for "social, gymnastic, esthetic, musical, yachting, hunting, fishing, batting, or lawful sporting purposes" and for no others.[8] If, as appellant contends, it was actually organized exclusively for charitable, scientific, and educational purposes, the men who organized it misrepresented the facts and made use of the wrong statute. There is no showing that they did so. Even if there were conclusive evidence that they did so, it is not clear that appellant's case would be strengthened; for it might well be urged that a corporation is not "organized," within the meaning of the exemption clause which we are construing, unless it is validly organized under an appropriate statute.

Appellant relies on International Reform Federation v. District Unemployment Compensation Board.[9] We there interpreted the present exemption clause to include purposes of promotion and propaganda directed solely toward the benefit of the community. We did not interpret it to include undertakings which may be "purely for sport and recreation" and independent of any benefit to the community. Neither did we hold, as appellant suggests, that a corporation whose primary purpose is charitable and whose other purposes have nothing to do with charity is organized exclusively for charitable purposes. Moreover, it is not clear that appellant's primary purpose is charitable.

▮ We conclude that appellant is not "organized * * * exclusively" for purposes which the District statute exempts. We need not consider whether it is "operated exclusively" for such purposes.

▮ The complaint states that after appellant had paid, under protest, contributions for the years from 1935 to 1938,

---

[1] Sec. 1(b) (7), as amended, 49 Stat. 1888, D.C.Code, 1940, § 46—301.

[2] Carmichael v. Southern Coal Co., 301 U.S. 495, 508, 509, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327.

[3] Hale v. State Board of Assessment, 302 U.S. 95, 58 S.Ct. 102, 82 L.Ed. 72.

[4] Mohawk Mills Association v. Miller, 260 App.Div. 433, 22 N.Y.S.2d 993.

[5] In re De Peyster's Estate, 210 N.Y. 216, 104 N.E. 714, 715. Stanford University Book Store v. Helvering, 65 App.

D.C. 364, 83 F.2d 710. Cf. Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 373, 374, 56 S.Ct. 285, 80 L.Ed. 278; Roche's Beach, Inc., v. Commissioner of Internal Revenue, 2 Cir., 96 F.2d 776.

[6] Hazen v. National Rifle Association, 69 App.D.C. 339, 343, 101 F.2d 432, 436.

[7] N.Y.Laws, 1848, c. 319.

[8] N.Y.Laws, 1865, c. 368. Aside from the differences in respect to purposes, the two acts are almost identical.

[9] U.S.App.D.C., 131 F.2d 337.

it "petitioned the Board for a rehearing, claiming exemption"; that the Board held a hearing; that "exemption was thereafter accorded"; and that the Board's counsel so notified appellant by letter. The complaint states no other facts with regard to the Board's action. We are not even told whether the action referred to past payments, future payments, or both.[10] The complaint states only the alleged legal effect of the Board's action, namely, that it "accorded" an "exemption." It is hardly necessary to say that this legal conclusion is not admitted by appellee's motion to dismiss. But since appellee does not raise this point, we prefer not to rest our decision upon it. Whatever the fact may be, we assume for present purposes what the parties appear to have assumed; that the Board clearly and formally ruled, in 1938, that appellant was entitled to exemption both retrospective and prospective. Appellant contends that it is therefore entitled, on grounds of estoppel and res judicata, to refund of all that it contributed before June, 1941, when the Board reversed its ruling.

Since there is no showing that appellant changed its position or was in any way injured by reason of the Board's earlier ruling, there is no basis for the claim of estoppel.

Though the doctrine of res judicata has been applied to administrative action of some sorts,[11] it is clear that this judicial doctrine is not to be imported into all administrative proceedings. Administrative agencies are not bound by "the conventional judicial modes for adjusting conflicting claims," and "an administrative determination in which is imbedded a legal question open to judicial review does not impliedly foreclose the administrative agency, after its error has been corrected, from enforcing the legislative policy committed to its charge."[12] The Supreme Court was dealing, in the case quoted, with an administrative error which had been corrected by a court, but the principle is broader than the instance. What errors administrative agencies themselves may correct depends ultimately upon the balance of conflicting considerations. It is always desirable that controversies be settled quickly and finally, but it is also desirable that they be settled correctly. When a controversy concerns exemption from taxation, the second sort of consideration may outweigh the first. If statutory tax exemptions should be construed strictly, so should administrative enlargements of those exemptions. At any time within the statute of limitations the Commissioner of Internal Revenue may cancel, retroactively, an exemption or deduction which he has erroneously allowed.[13] The present case involves not mere general taxation, but taxation for a particular social purpose which Congress sought to accomplish. The Board's former error should not take from the Unemployment Fund any of the contributions which the act of Congress required appellant to pay. Although the law and the facts were the same in 1941 as in 1938, appellant concedes that the Board could reverse an erroneous ruling prospectively. We think it could do so retrospectively as well.

Affirmed.

---

[10] Appellant's brief implies that it referred to past payments only.

[11] Cases are reviewed in Res Judicata in Administrative Law, 49 Yale L.J. 1250 (1940).

[12] Federal Communications Commission v. Pottsville Broadcasting Co., 309 U.S. 134, 142, 145, 60 S.Ct. 437, 84 L.Ed. 656.

[13] Burnet v. Porter, 283 U.S. 230, 51 S.Ct. 416, 75 L.Ed. 996; Harriton v. Lucas, 59 App.D.C. 340, 41 F.2d 429; Stanford University Book Store v. Helvering, 65 App.D.C. 364, 366, 83 F.2d 710; Commissioner of Internal Revenue v. Newport Industries, Inc., 7 Cir., 121 F.2d 655.

Hunt v. District of Columbia, 71 App. D.C. 143, 108 F.2d 10, disapproving reassessment of personal property after the "current year," turned on a statute, D.C. Code, 1929, tit. 20, § 769 (now D.C.Code, 1940, tit. 47, § 1213). Cf. Hecht Co. v. District of Columbia, U.S.App.D.C., 129 F.2d 353.