### MITCHELL et al. v. COHEN.
### SAME v. HUBICKEY.
### Nos. 9446, 9447.

United States Court of Appeals
District of Columbia.

Argued Jan. 24, 1947.

Decided March 24, 1947.

---

[7] 1929, 279 U.S. 306, 49 S.Ct. 304, 73 L.Ed. 704.

EDGERTON, Associate Justice, dissenting.

Mr. Richard E. Guggenheim, Attorney, Department of Justice, of Washington, D. C., with whom Mr. J. Francis Hayden, Special Asst. to the Atty. Gen., and Mr. Ellis Lyons, Atty., Department of Justice, and Mr. George Morris Fay, United States Attorney, both of Washington, D. C., were on the brief, for appellants.

Mr. Spencer Gordon, of Washington, D. C., with whom Mr. Gerhard A. Gesell, of Washington, D. C., was on the brief, for appellees.

Messrs. John Lewis Smith and Joseph J. Malloy, both of Washington, D. C., on behalf of the American Legion, filed a brief as amicus curiae, urging reversal.

Messrs. Robert P. Smith, William B. Ristig and Robert V. Smith, all of Washington, D. C., on behalf of James A. Mac-Kenzie, filed a brief as amicus curiae, urging affirmance.

Before EDGERTON, WILBUR K. MILLER, and PRETTYMAN, Associate Justices.

PRETTYMAN, Associate Justice.

Appellees, having been denied veterans' preferences and having been, or being about to be, discharged from their civilian positions in the War and Navy Departments, respectively, brought civil actions for injunctions against the Civil Service Commission and for declaratory judgments. Their claims were for preference in federal employment under the Veterans' Preference Act of 1944.[1] Summary judgments were entered for them. The members of the Commission, named as defendants individually and officially, appealed. The cases were consolidated for argument and decision in the court below and also in this court.

The Act provides that in certification for appointment, and in retention in civilian positions in Government employ, preference shall be given to "those ex-servicemen and women who have served on active duty in any branch of the armed forces of the United States, during any war, * * * and have been separated therefrom under honorable conditions."[2]

It is not disputed by the Commission that appellees served on active duty with a

---

[1] Act of June 27, 1944, 58 Stat. 387, 5 U.S.C.A. § 851 et seq.

[2] Sec. 2 of the Act.

branch of the armed forces during the recent war; nor it is disputed that they were separated therefrom under honorable conditions. So much is specifically stated in its brief. The Commission says that appellees are not "ex-servicemen". It says that the word is not defined in the statute and has no clear-cut legal significance when separated from its context, but that when read with the Act as a whole its meaning is quite clear.

These appellees were enrolled as temporary members of the United States Coast Guard Reserve. This was by statute a component part of the Coast Guard, in war a part of the Navy; and its organization, general duties and the powers of the Commandant relative thereto were designated by statute.[3] Appellees took the oath of allegiance required of regular members of the Coast Guard. The period of enrollment was the duration of the war. They enrolled for, and were assigned to, duty in the Volunteer Port Security Force. As such, they relieved regular Coast Guard personnel in the protection of ports and waterfronts and patrolled those waterfronts. A number of them were injured and killed in the line of duty. They were on active duty only as directed and for a minimum of twelve hours a week. Their active duty was, in fact, part-time. While on duty, and en route to and from duty, they wore regular Coast Guard uniforms; had military status; were vested with the same powers and authority as members of the regular Coast Guard with the same rank, grade or rating; were subject to the laws, regulations and orders of the Coast Guard and to its disciplinary action; received food and quarters; and, in case of sickness or disease contracted while on duty, were entitled to the same treatment as were regular Coast Guardsmen. They received no compensation for their service; were not subject to transfer without their consent; were not exempt from registration or liability for service under the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq.; were permitted to retain civilian employment;

and, in case of injury or death, were entitled to only the benefits bestowed upon civilian employees.

The Commission says that three of the foregoing features of appellees' service are sufficient to bar their preference: (1) that they could retain their civilian employment; (2) that they remained subject to the draft; and (3) that they could be transferred only with their consent. It says that because of these features appellees are not "ex-servicemen", although they served on active duty with a branch of the armed forces during the war. It says that "The question of who is a veteran cannot be defined by easy formula" and that "the scope of the group included in any such statute can only be defined in terms of purpose of that statute."

Either of two considerations determines the matter, in our opinion. In the first place, we think it plain that one who has taken the military oath of service, who is a member of a component of the armed forces, who is subject to and actually engaged in military duty, and who is governed by the rules of military discipline, is a "serviceman". The problem is not unlike that decided in United States v. Tyler.[4] The question there was whether an army officer who had been retired for more than twenty years, was "in the service". The Court said:

"It is impossible to hold that men who are by statute declared to be a part of the army, who may wear its uniform, whose names shall be borne upon its register, who may be assigned by their superior officers to specified duties by detail as other officers are, who are subject to the rules and articles of war, and may be tried, not by a jury, as other citizens are, but by a military court-martial, for any breach of those rules, and who may finally be dismissed on such trial from the service in disgrace, are still *not* in the military service.

"If Congress chose to provide for their qualified relief from active duty, and for a diminished compensation, it did not dis-

---

[3] Act of Feb. 19, 1941, 55 Stat. 11, as amended, 14 U.S.C.A. § 301 et seq.

[4] 1882, 105 U.S. 244, 26 L.Ed. 985.

charge them from their other obligations as part of the Army of the United States. * * * " 5

In United States v. Morton,[6] the Supreme Court held that the "service" of an army officer began when he executed the sworn agreement to serve and took the oath of office as a cadet at West Point. The Supreme Court had before it, in Billings v. Truesdell,[7] the question as to when a registrant is inducted into service, and held that he is actually inducted when "he undergoes whatever ceremony or requirements of admission the War Department has prescribed", which in the recent war was "a short, dignified ceremony in which the men are administered the oath".

Similar problems have frequently arisen in respect to Government employ in civilian capacity. Criminal statutes [8] impose certain restrictions upon such persons, and the Attorney General and the courts have had to determine from time to time the status of particular ones. The question arose in acute form concerning the members of War Price and Rationing Boards and the Selective Service Boards. Their services were part-time, voluntary and without compensation, but an oath of office was required and the appointments involved governmental duties.[9] The Attorney General held [10] that a member of a War Price and Rationing Board was an "officer or clerk in the employ of the United States" within the meaning of Section 113 of the Criminal Code. That Congress regarded the members of the Selective Service Boards, Rationing Boards, and Alien Enemy Hearing Boards as officers or clerks in the employ of the United States, regardless of the temporary, voluntary and unpaid character of their services, is shown by the enactment of statutes specifically exempting them from the criminal statutes applicable to such officers and employees.[11]

Thus, distinctions between those in and those not in service, heretofore proposed in other situations, based upon part-time, voluntary or unpaid service, have been rejected both as to military service and as to Government "employ". It would unsettle many established rules if a departure from the simple test were now inaugurated.

The Commission says that appellees have fewer indicia of veterans' status than do many civilians who served with the armed forces. It points to Red Cross representatives who accompanied combat troops in the field, civilian technicians stationed in combat zones, and members of the Civil Air Patrol as examples of those with greater indicia of service status. But it seems to us that the adoption of any such evaluation of comparative indicia, instead of the simple established test, for the difference between a civilian and a serviceman, would lead at once into a hopeless morass. The civilians mentioned by the Commission have more of these suggested indicia than do army officers or men who performed "paper work" in offices in this country and lived with their families. But nobody would argue that the latter were not in the service. Also, these temporary Coast Guardsmen have greater indicia of that sort than do many of those officers and men. They performed dangerous ac-

---

5 See also to the same effect Wood v. United States, 1883, 107 U.S. 414, 417, 2 S.Ct. 551, 27 L.Ed. 542; Badeau v. United States, 1889, 130 U.S. 439, 9 S. Ct. 579, 32 L.Ed. 997; Kahn v. Anderson, 1921, 255 U.S. 1, 41 S.Ct. 224, 65 L.Ed. 469; 29 Op.Atty.Gen. 397 (1912); Morgenthau v. Barrett, 1939, 71 App. D.C. 148, 108 F.2d 481. The latter decision led to an amendment of Sec. 113 of the Criminal Code by an Act of Oct. 8, 1940, 54 Stat. 1021, 18 U.S.C.A. § 203.

6 1884, 112 U.S. 1, 5 S.Ct. 1, 28 L.Ed. 613.

7 1944, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917.

8 Secs. 109 and 113 of the Criminal Code, 18 U.S.C.A. §§ 198, 203.

9 See Selective Service Regulations (3d printing, 2d ed.) pars. 602.2, 602.4, as to Selective Service Boards; and Sec. 201 (a) of the Emergency Price Control Act of 1942, 56 Stat. 29, 50 U.S.C.A.Appendix, § 921 (a) and O.P.A.Regs. 1315.201, 7 F.R. 73, in respect to War Price and Rationing Boards.

10 40 Op.Atty.Gen., Op.No.74 (Dec. 9, 1943).

11 Act of May 5, 1941, 55 Stat. 150, as amended Dec. 26, 1941, 55 Stat. 861, and Dec. 20, 1944, 58 Stat. 838, 18 U.S.C.A. § 198 note; Act of April 4, 1944, 58 Stat. 189.

tive duty offshore, and a number of them were killed. To distinguish between those in and those not in service by a comparison of indicia as suggested by the Commission would be an impossible task and wholly unjustified by the simple statutory word "servicemen".

The Commission says that the limitation on appellees' service, in that they could not be transferred without their consent, shows that they were not in the service. But there were limited services even for men inducted by Selective Service processes. There was a limited noncombatant service, and limited service due to physical causes, such as "cannot march", "cannot do heavy work", "insufficient vision for fine work", and "can do sedentary work".[12] No one would contend that such people, having been inducted, were not in the service. The Women's Reserve of the Navy was a branch of the Naval Reserve,[13] which was a component part of the United States Navy,[14] but its duties were restricted by statute. Its members could not be assigned to duty on board vessels of the Navy and could be assigned to duty outside the continental United States only upon their prior request.[15] It is certainly generally understood that this limitation upon service did not negative the Waves' "service". There was also a Limited Service Marine Corps Reserve which was a part of the Marine Corps Reserve and a component part of the United States Marine Corps.[16] Thus, it is clear beyond question that, as a generality, limited service is nevertheless service. What then is the critical difference between a limitation which prevents transfer of station without consent, and one which prevents transfer to a station outside the United States without consent? Or between a geographical limitation and a functional limitation? The Commission does not suggest, and we do not perceive, any critical distinction between types of limitation which could be the criterion for holding some limited service to be service, but contrariwise as to other such service. The word "servicemen" does not,

in our opinion, have any inherent restriction based upon different types of limitation upon service.

The limitations upon appellees' service were not inherent in the organization as created by statute but were by way of prescription of the Commandant and the subsequent agreement of the members. The statute gave the Commandant, with the approval of the Secretary, power to enroll members and to prescribe their duties, "including but not limited to part-time and intermittent active duty with or without pay".[17] That these appellees were on part-time active duty and without pay was due to the Commandant's directions, formally agreed to by them upon enrollment. He enrolled temporary reservists for various classes of duty, prescribed by him in general orders. Some classes received pay, and some did not; some were part-time, and some were not; some were subject to transfer of station, and some were not. But all were temporary members of the Coast Guard Reserve, enrolled, as the statute provides,[18] "for duty under such conditions as he [the Commandant] may prescribe". Status, as military or civilian, cannot be determined by a formula derived from a commanding officer's prescription of duties for particular members of his command. So much is obvious. This command itself was by statute a component of the armed forces. What the commanding officer did with its members is immaterial to their status.

The Commission does not suggest any formula for segregating members of a component of the armed forces into those in and those not in the service. It merely advances reasons for denying preference to this particular class. We are not told what weight the Commission would give the voluntary feature, or the non-pay feature, or the part-time feature. No general regulation applicable to all classes has been proposed, so far as we are advised.

That the service of these temporary reservists was part-time is immaterial, both

---

[12] Classifications I-A-O, I-B, I-B-O, Selective Service Regulations (1st ed.) pars. 328, 343, 364, 604, 613.
[13] 34 U.S.C.A. § 857.
[14] 34 U.S.C.A. § 853.

[15] 34 U.S.C.A. § 857c.
[16] 34 U.S.C.A. §§ 853a, 853a—1.
[17] 14 U.S.C.A. § 307.
[18] 14 U.S.C.A. § 307.

upon the precedents we have cited and upon reason. A man who is in the service for one week is certainly in the service. One who is there half or a fourth of his time is certainly there for that time. He is a serviceman of some variety. There may be varieties of servicemen, but this statute merely says "ex-servicemen".

The contention of the Commission that Congress did not intend to confer preference on those who continued normal civilian employment during the war, is completely refuted by the fact that in the same paragraph of the Act Congress gave the same preference eligibility to the unmarried widows of deceased servicemen. Generally speaking, the wives of servicemen continued normal civilian employment during the war. And, in any event, Congress wrote no such restriction as the Commission now proposes.

The Commission points to the provision that temporary reservists in the Coast Guard were not exempted from registration and liability for service under Selective Service as were other members of the Reserve. But the Commission tells us in its brief that it has granted preference to one class of these temporary reservists. Moreover, that a man in one type of service is liable to another type is not a denial that he is in the service; for example, as in United States v. Tyler, supra, that a retired army officer might be called to active, full-time, paid duty did not negative his service status while he was retired.

The second conclusive consideration upon the question is the administrative and legislative history of the question. On April 4, 1944, the Civil Service Commission issued a Circular Letter (No. 4145), in which it held that temporary reservists under the Coast Guard Auxiliary and Reserve Act of 1941, whether full-time, part-time, or intermittently, either with or without pay, were considered to be in active service and were entitled to preference. The Veterans' Preference Act became effective June 27, 1944. It contained a provision that "this act shall not be construed to take away from any preference eligible any rights heretofore granted to, or possessed by, him under any existing law, Executive order, civil-service rule or regulation, of any department of the Government or officer thereof." [19] On November 4, 1944, the Commission reversed its former ruling and withdrew the preference,[20] giving rise to the present litigation. Both appellees were enrolled in the Coast Guard before this latter ruling. It requires no elaboration to emphasize the conclusion that this history supports appellees' contentions as to the meaning of the Act.

Amicus curiae American Legion says that in many respects the status of appellees is similar to that of those who formerly served in the Women's Army Auxiliary Corps under Public Law 554, 77th Cong., 2d Sess., 1942.[21] The illustration well serves the point. That Act of May 14, 1942, specifically provided that "The corps shall not be a part of the Army, * * * * " [22] But that Act was repealed July 1, 1943, and a new Act passed which provided that "There is hereby established in the Army of the United States, * * * a component to be known as the 'Women's Army Corps'. * * * The enlisted personnel of such corps shall consist of women * * * who are enlisted in the Army of the United States * * *." [23] Thus, the former corps, the WAAC, was specifically, by statute, not in the Army, whereas the latter corps, the WAC, was. It could hardly be denied that the members of the latter were in the service.

We hold that a person who has taken the oath as a member of a component of the armed forces and, as such, has been on naval duty, in the regular uniform, of the command, with the perquisites of rank of the regular members, and has been subject to military discipline and liable to separation under dishonorable conditions, is an ex-serviceman. In the language of the Court in United States v. Tyler, supra, it would be impossible to hold that such a person is not in the service. It would indeed be an anomaly to hold that a petty officer in command of a Coast Guard vessel on anti-submarine duty offshore was not

---

[19] Sec. 18 of the Act, 5 U.S.C.A. § 867.
[20] Departmental Circular 508.
[21] 56 Stat. 278.

[22] Sec. 12 of the Act, 56 Stat. 281.
[23] 57 Stat. 371, 50 U.S.C.A.Appendix, §§ 1551-1555.

in the service while the men under him were.

 The Commission presents arguments of policy as to why these temporary reservists should not be granted the preference privilege. Those considerations are not for the courts. Congress used a simple word, "ex-servicemen", and made two limitations upon its grant of the privilege to them, namely, that they must have served on active duty with the armed forces in war, and that they must have been separated from the service under honorable conditions. The courts cannot write further exceptions into the statute. They must apply what Congress has provided. Views as to other policies should be presented to the Congress, together with such recommendations as the Commission may deem advisable. The doors of Congress are open to the Commission, and the members are readily accessible. If the Congress wished to make further exceptions to the privilege, it could, and no doubt would, describe them with particularity. If it wished to exclude the temporary reservists of the Coast Guard from the preference, it could do so, by name and simply; but the courts cannot. The courts cannot rewrite the statute, and they should not inaugurate the confusion which would be caused by interpreting the simple word "ex-servicemen" by some unrestricted evaluation of indicia based on the time spent on active duty, the nature of the Commandant's prescription of duties, or the extent or existence of pay. The treatment to be given ex-servicemen is peculiarly a legislative problem. It is involved in many statutes. When Congress says simply "ex-servicemen", and then excludes certain ones, it is not for the Commission or the courts to set up other standards. Not only are the courts not empowered to rewrite plain terms in a statute, but they are not equipped to write formulae of general application upon a subject of so great variation in its facts.

Affirmed.

EDGERTON, Associate Justice (dissenting).

The Commission's understanding of the term "ex-servicemen" is in accordance with ordinary usage. The court's construction conflicts with ordinary usage. When one speaks of ex-servicemen one is not speaking of men who always remained subject to draft; who lived at home and could not, except through the machinery of the draft, be ordered to leave home; who constantly carried on their regular civilian occupations as usual; and whose connection with the armed forces involved only part-time unpaid work which entitled them only to civilian benefits in case they were injured. The court's basic error is in its assumption that the meaning of the term does not depend on usage but can be found by analysis. Arguing that if men performed service they must be ex-servicemen is much like arguing that if men work they must be workmen and if mothers are grand they are grandmothers.

The context also conflicts with the court's construction. That construction makes the statutory language, "those ex-servicemen and women who have served on active duty in any branch of the armed forces of the United States, during any war," mean just what it would have meant if Congress had used the word "persons" instead of the phrase "ex-servicemen and women." It is unlikely that Congress used the somewhat awkward phrase as a mere synonym for the simple word.

The Commission's construction, besides being the one that usage and context require, is "also more consonant with the legislative purpose" [1] which is stated in the title of the Act: "to give honorably discharged veterans, their widows, and the wives of disabled veterans, * * * preference in employment * * *." Congress intended to aid in the rehabilitation and reemployment of "veterans." It is paradoxical to suggest that Congress intended to include, and aid in the rehabilitation and reemployment of, a whole class of men whose regular employment and way of life were never interrupted. To extend employment preference to men in appellees' situation will weaken the competitive position of the veterans whom Congress intended to help.

---

[1] Board of Governors of Federal Reserve System v. Agnew, 1947, 67 S.Ct. 411.

It will also weaken the competitive position of the munitions makers, and the many other employees both public and private, who did essential war work but have been given no preference.

Plainly a "preference eligible" is a person eligible for employment and entitled to preference. The only men to whom the Act gives a preference are "ex-servicemen." No one contends that appellees were, or ever had been, ex-servicemen either on June 27, 1944, when the Act was passed, or on November 4, 1944, when the Commission corrected its erroneous ruling. On both those dates appellees' service, such as it was, was still going on. Since appellees were not and never had been ex-servicemen on either date, they were not and never had been preference eligibles on either date. Clearly, therefore, they are not within the proviso that "this act shall not be construed to *take away from any preference eligible* any *rights heretofore granted to, or possessed by, him* under any existing law, Executive order, civil-service rule or regulation, of any department of the Government or officer thereof."[2] It is unnecessary to consider whether "rights" could, in any case, have been "granted" by a Commission ruling not in accordance with law.

---

[2] 58 Stat. 391, § 18, 5 U.S.C.A. § 867. [Italics supplied.]