## DISTRICT OF COLUMBIA v. CATHOLIC EDUCATION PRESS, Inc.

No. 10835.

United States Court of Appeals District of Columbia Circuit.

Argued May 26, 1952.

Decided July 3, 1952.

Writ of Certiorari Denied Dec. 8, 1952.

See 73 S.Ct. 276.

Edgerton, Circuit Judge, dissented.

George C. Updegraff, Asst. Corp. Counsel, Washington, D. C., for the District of Columbia, with whom Vernon E. West, Corp. Counsel, and Chester H. Gray, Principal Asst. Corp. Counsel, Washington, D. C., were on the brief, for petitioner.

John L. Hamilton, Washington, D. C., with whom George E. Hamilton, Jr., Wash-

3. 1952, 90 U.S.App.D.C. 365, 196 F.2d 600, 601.

ington, D. C., was on the brief, for respondent.

Before STEPHENS, Chief Judge, and EDGERTON, CLARK, WILBUR K. MILLER, PROCTOR, BAZELON, and WASHINGTON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The District of Columbia petitions for review of a decision of its Board of Tax Appeals that the personal property of Catholic Education Press, Inc., is exempt from taxation under § 47–1208, D.C.Code 1940, the pertinent part of which follows:

"The following personal property shall be exempt from taxation.

"First. The personal property of all library, benevolent, charitable, and scientific institutions incorporated under the laws of the United States or of the District of Columbia and not conducted for private gain."

The Press is a non-profit, non-stock corporation organized under Title 29, Chap. 6, of the D.C.Code 1940. Its corporate purposes are stated to be the preparation, publication and distribution of educational, literary, scientific and religious matter. In connection with the attainment of these purposes the by-laws of the Press provide it shall have power

"A. To carry on and promote study and research in any department of learning and to coordinate and promote the labor of scholars, institutions, and organizations for the purpose of producing educational, literary, scientific, and religious matter, and other material for publication.

"B. To publish books, periodicals, and bulletins on all matters relating to educational, literary, scientific, religious, and general subjects.

"C. To found prizes, maintain, libraries, archives, and museums, endow professorships, courses of lectures, fellowships and scholarships in connection with the production, publication, and distribution of books, periodicals, and bulletins."

The Press has not been able to achieve all its purposes, but it has published and distributed books on education, religion, history and logic; it has distributed a series of spelling books, books on music for use in Catholic schools, and phonograph records of Gregorian chants. It publishes during the academic year a monthly periodical dealing with the science of education, called "The Catholic Educational Review."

If the Catholic Education Press is a scientific institution, if it is incorporated under the laws of the District of Columbia, and if it is not conducted for private gain, it meets the three requirements for exemption from personal property taxation which are enumerated in the statute.

It is incorporated under the laws of the District of Columbia, so one of the three requirements is met. Its charter declares it to be a non-profit organization. No dividends have been paid to stockholders,—there are no stockholders. Such profits as accrue are retained by The Catholic University of America.[1] None of its officers receives a salary, with the exception of the manager, who is paid $1,200 a year.

But the District of Columbia says because it pays royalties to its authors, the Press is operated for their private gain. The conclusion seems to us to be unwarranted, unless such payments are larger than royalties usually paid by publishing houses in comparable circumstances. There is no suggestion in the record that the Press pays such excessive royalties that a portion thereof should be considered a distribution of profits. We conclude that the Press is not conducted for private gain. Thus, as presently conducted, it meets a second of the three requirements for tax exemption which are stated in the statute.

It remains to determine whether the respondent Press is a scientific institution within the meaning of the Code provision. In a proper and basic sense of the term, a university is a scientific institution. This court said in the Mount Vernon Seminary case that an educational institution is a scientific institution within the meaning of

1. The relationship between the Press and the University is described later in this opinion.

the tax exemption statute now under consideration.[2] In the same year in which the Mount Vernon Seminary case was decided, a brief filed for the District of Columbia in Hazen v. National Rifle Association, 69 App.D.C. 339, 101 F.2d 432, said: "The authorities of the District are in accord with the view that an educational institution is exempt from personal taxes as a scientific institution."[3] On oral argument, the Assistant Corporation Counsel who appeared for the District said its authorities are still in accord with that view. Cf. United States v. Proprietors of Social Law Library, 1 Cir., 1939, 102 F.2d 481; Weyl v. Commissioner of Internal Revenue, 2 Cir., 1931, 48 F.2d 811.

We conclude, on reason and authority, that the Catholic Education Press is entitled to exemption if it is an educational institution.

We do not stop to consider the respondent's argument that, even if it be regarded as an independent entity, the Catholic Education Press is an educational institution because, like its corporate purposes, its activities are educational in character, except under the narrow view—which ought not to be accepted—that no institution can be educational in character unless it has teachers working directly with students; that it should be held an educational institution, and so exempt, even if it had no connection with The Catholic University of America.

That question is not before us because the Catholic Education Press does not stand alone. It is a publishing arm of the University.[4] It is an integral part of it. It has no separate life except bare technical corporate existence. It is not a private independent corporation, but to all intents and purposes it is a facility of the University. The accuracy of these statements is shown, we think, when these questions are answered: Who owns the Catholic Education Press? Who operates it? What is its relation to The Catholic University of America?

The by-laws of the Press provide that its principal office shall be 620 Michigan Avenue, N.E., Washington 17, D. C. That is the address of the Administration Building of the University, where the Press is physically housed. Under its by-laws and in actual practice, the Press is directed, controlled and managed by a Board of Trustees consisting of "the same number and the

2. In footnote 3 to the opinion in District of Columbia v. Mount Vernon Seminary, 1938, 69 App.D.C. 251, 100 F.2d 116, 117, the following appears: "It is interesting to note that under statutes similar to the present one, educational institutions have been held to fall within the category of scientific institutions. * * * it is a matter of common knowledge that all general educational establishments have universally been known as "scientific institutions," and fall naturally and directly within it. A "scientific institution," under the language of all civilized countries, means an institution for the advancement or promotion of knowledge, which is the English rendering of "science." ' Detroit Home and Day School v. Detroit, 76 Mich. 521, 523, 43 N.W. 593, 594, 6 L.R.A. 97. See, also, Board of Trustees v. Outagamie County, 150 Wis. 244, 136 N.W. 619, 2 A.L.R. 465; St. John's Military Academy v. Edwards, 143 Wis. 551, 128 N.W. 113, 139 Am.St.Rep. 1123; [City of] Indianapolis v. Sturdevant, 24 Ind. 391; Board of Assessors v. Garland School of Home Making, [296 Mass. 378] 6 N.E.2d 374."

3. Among the counsel who made this statement was Vernon E. West, then Principal Assistant Corporation Counsel for the District of Columbia. Mr. West is the present able Corporation Counsel who, with his assistants, appears for the District of Columbia in the present case. Mr. West still adheres to the statement quoted from his brief in the Hazen case, according to Mr. Updegraff, his assistant, who argued here.

4. The Board of Tax Appeals found that the Press "is not * * * the publishing arm of the University. That is a corporation known as Catholic University of America Press." This finding is not strictly accurate. It is true that the record shows the Catholic University of America Press to be a publishing arm of the University. But the undisputed proof is that Catholic Education Press is also a publishing arm of the University, devoted to that phase of the University's work which has to do with the science of education.

same persons as comprise the Executive Committee of the Board of Trustees of The Catholic University of America." The meetings of its trustees are held on the dates on which the Executive Committee of the Board of Trustees of the University convenes. The officers of the Press are the same as the officers of the University, that is to say, the president of the University is the president of the Press, and so on.

The Press has no bank account. Its revenue goes into the treasury of the University, its expenses are paid by the University, its deficits are borne by the University, and its earnings are retained by the University. Its accounts are kept by the University, for which a charge is made—which we regard as a bookkeeping entry to enable the University to know the cost of operating its Press. The obvious purpose of its formation was that the Press should assist the University in its work in the field of education.

It is difficult to conceive of a more complete identity between two institutions than that of the Catholic Education Press and The Catholic University of America.

The District relies upon Stanford University Book Store v. Helvering, 1936, 65 App.D.C. 364, 83 F.2d 710, 712. That case is readily distinguished from the present one. The relation between the Book Store and Stanford University did not approach the intimacy between—the practical identity of—the Press and The Catholic University. In describing the relationship in the Stanford University case, this court said:

> " * * * It must be remembered that the association [Book Store] is not, in contemplation of law, a division or part of the university. The university as such does not own any interest in the association, is not responsible for its debts, is not entitled to any part of its earnings, and takes no part in conducting and managing its affairs. * *

The members of the faculty of the university, as such, were not charged with the duty of conducting the affairs of the association." [5]

This is in sharp contrast with the facts here. If anybody owns the Catholic Education Press, The Catholic University owns it. As we have said, the University collects and retains its earnings, pays its debts, and manages its affairs. The trustees and officers of the University are charged with the duty of conducting the affairs of the Press; in the Stanford case there was no such duty.

If The Catholic University of America, in its own name, should engage in activities identical with those of its subsidiary, the Catholic Education Press, we suppose its right to exemption from taxation on the personal property used in such activities would not be questioned. We see no reason for denying the exemption to the University merely because it chooses to do the work through a separate non-profit corporation.

Affirmed.

STEPHENS, Chief Judge, concurs in the result.

EDGERTON, Circuit Judge.

I dissent for the reasons stated in the former opinion of the court, reversing the Board, which was filed November 23, 1951. That opinion, now superseded, was as follows:

"Congress has provided that in the District of Columbia 'The following personal property shall be exempt from taxation. First. The personal property of all library, benevolent, charitable, and scientific institutions incorporated under the laws of the United States or of the District of Columbia and not conducted for private gain.' 37 Stat. 1006, D.C.Code 1940 § 47–1208. * * *

---

5. Moreover, this court held in the Stanford University case that the earnings or profits of the Book Store were in part paid to private individuals. At stated intervals a portion of the Book Store's profits was paid to customers according to receipts for purchases held by them. "The amount so paid," we said, "appears under the name of 'dividends' or 'rebates' in the transactions of the association, and it was a part of the profits of the association, and thereby inured to the benefit of a private individual." There is no such arrangement in the present case.

"The Press is a non-stock, non-profit corporation organized under 31. Stat. 1283, 1284, D.C.Code 1940 Title 29, Chap. 6. Its object as stated in its charter is 'the preparation, publication and distribution of educational, literary, scientific, or religious matter.' As the Board found, the Press 'has published and sold various books on education, religion, history and logic, all from a Catholic point of view; also a series of spellers of some, but not much religious content, and phonograph records of Gregorian chants.' It publishes the Catholic Educational Review, a monthly periodical whose purpose is to give advice to school teachers and administrators and discuss problems of interest to educators. It also sells books on commission for one individual. It does no printing.

"The Press does not contend that it is either a library, a benevolent institution, or a charitable institution. It contends and the Board found that it is a scientific institution. We think the evidence does not support this finding. The fact that a publishing house specializes in educational, scientific and religious works does not make it what any one would ordinarily call a scientific institution or, for that matter, an educational institution. The 'assumption that the meaning of the term does not depend on usage but can be found by analysis' is erroneous. Dissent in Mitchell v. Cohen, 82 U.S.App.D.C. 83, 89, 160 F.2d. 915, 921, reversed, 333 U.S. 411 [68 S.Ct. 518, 92 L.Ed. 774]. No doubt Congress might have used the term 'scientific institutions' in some extraordinary sense, but nothing in the context or elsewhere suggests that it did so.

"The Press is associated with the Catholic University of America. It has the same officers as the University and its trustees are the Executive Committee of the Board of Trustees of the University. The Press has no bank account. The General Accounting Office of the University takes charge of its receipts, makes its disbursements, and keeps its accounts. During the first year of its operation the Press had a deficit which was covered by advances from the University. But the record shows that the Press and the University are distinct entities in substance as well as form. The University makes a charge to the Press for keeping its accounts. The Press has regarded advances from the University as loans and has repaid them in part from profits of a subsequent year. Except by way of 'advances', no funds other than those of the Press are shown to have been used in paying Press bills. And the Press 'is not * * * the publishing arm of the University. That is a corporation known as Catholic University of America Press.'

"The case is more or less like Stanford University Book Store v. Helvering, 65 App.D.C. 364, 83 F.2d 710, in which we held that the Book Store was not ' "operated exclusively for religious, charitable, scientific, literary, or educational purposes".' The Press is not even operated, as the Book Store was, for the almost exclusive use of persons connected with the University.

"Since the Press is not the University we think it irrelevant that schools have been called scientific institutions as well as educational institutions. The legal separateness of two corporate entities, which insulates each from liability for the obligations of the other, cannot be disregarded in order to extend to either a right or privilege of the other. See New Colonial Ice Co. v. Helvering, 292 U.S. 435, 441, [54 S.Ct. 788, 78 L.Ed. 1348]. Exemptions from taxation are construed strictly. Hale v. [Iowa] State Board of Assessment and Review, 302 U.S. 95 [58 S.Ct. 102, 82 L.Ed. 72]; Hebrew Home for the Aged v. District of Columbia, 79 U.S.App.D.C. 64, 142 F.2d 573."