DWIGHT SCHOOL OF ENGLEWOOD, NEW JERSEY, A BODY CORPORATE, PROSECUTOR, v. STATE BOARD OF TAX APPEALS AND THE CITY OF ENGLEWOOD, DEFENDANTS.

Submitted October 12, 1934—Decided March 27, 1935.

Before Justices Heher and Perskie.

For the prosecutor, *Thomas G. Haight* and *John A. Hartpence.*

For the respondent city of Englewood, *F. Hamilton Reeve.*

The opinion of the court was delivered by

Heher, J. The decisive question here is whether the real and personal property of the prosecutor, Dwight School of Englewood, New Jersey, devoted to scholastic purposes, is exempt from taxation in virtue of the provisions of section 203 (4) of chapter 372 of the laws of 1931. *Pamph. L.* 1931, *p.* 905. The Bergen county board of taxation denied the claim for exemption, and sustained the assessment, for the purpose of taxation, made by the taxing district of the city of Englewood. The state board of tax appeals affirmed the judgment. The claimant thereupon sued out this *certiorari.*

The insistence of prosecutor is that the corporation is not conducted for profit; that the property included in the tax ratables is devoted exclusively to educational purposes, and that "it is an eleemosynary institution, pure and simple." But, without disputing these premises in their entirety, we cannot give assent to the view that the property in question is, in whole or in part, the subject of exemption from taxation within the intendment of the statute invoked.

The test is whether the purposes and objects of the school claiming the exemption are "fundamentally charitable or

philanthropic." *Carteret Academy* v. *State Board of Taxes and Assessments,* 102 *N. J. L.* 525; *affirmed,* 104 *Id.* 165. The claim for exemption here does not meet this standard or test of validity. In respect of this fundamental requirement, there is no substantial difference in point of fact between that case and this. The claimant here derives its corporate vitality from the statute providing for the incorporation of associations not for pecuniary profit. It was incorporated on June 24th, 1925. The design of its founders was to convey to the corporate body an existing privately-owned institution —a very profitable enterprise—maintained in the city of Englewood for the preparatory and general education of girls, under the name and style of "The Dwight School for Girls." The founders of the school were Miss Euphemia S. Creighton and Miss Ellen W. Farrar, who, shortly after the corporation came into being, conveyed to it title, in fee-simple absolute, to the lands devoted to school purposes, and with Miss Frances Leggett, who had acquired Miss Farrar's interest in the school, transferred to the corporation the title to the furniture, equipment and personal property contained therein. The declared design of the grantors was to secure a continuance of the school "along and according to the ideals" established by the grantors; and to effectuate that purpose it was "deemed advisable that a corporation without capital stock and without hope of pecuniary profit should be organized with a substantial board of trustees whose interest in Englewood and in the maintenance of a *desirable private school for girls* would assure the continuation of the enterprise." The institution has since been conducted as a comparatively exclusive private school for girls. The annual tuition fee ranges between $200 and $500; the maximum annual rate for boarding pupils is $1,500. On the date of the assessment at issue, the enrollment was two hundred and thirty pupils. The teaching staff consisted of thirty-two—an average of one teacher for seven students. There were twelve additional employes. At the time in question less than half of the pupils were residents of the city of Englewood; many of the remainder were not residents of this state. There was a considerable annual

outlay of money devoted to advertising the advantages of the school, in order to attract pupils from distant parts. The corporation pays annuities of $800 each to two former teachers who render no service in return. This obligation is imperative; the conveyance of the property was conditioned upon its performance. The salaries paid to the teaching staff compare favorably with the salaries paid in schools conducted for profit. Two of the trustees are teachers, and receive salaries as such; in addition, one is furnished board and lodging at the school.

The annual income has been in excess of operating expenses; but, it is insisted, that the surplus is more apparent than real, in that "depreciation on buildings and the amount necessary to annually amortize one of the mortgages," are properly included in the operating expenses. And it is said that "boarding pupils are taken and sought in order to make it possible to educate the children of Englewood and vicinity for a smaller tuition fee than would otherwise be possible." We are not persuaded of the validity of this claim. Considering the annual mortgage amortization payment of $4,500 as an operating expense, the school still yields a substantial surplus income. For the five-year period ending September 30th, 1932, the excess of income over expenses (including in the latter ordinary expenses, taxes, maintenance and repairs in the sum of $53,483.76, the mortgage amortization payments, and annuities) was $100,905.44. The excess income for the year ending September 30th, 1932, after the making of like deductions, was $13,930.64; in no year during that period did the expenses equal the income. The surplus account increased from $109,572 in 1928, to $200,569 on September 30th, 1932. Prosecutor maintains that the surplus is requisite "to provide necessary depreciation reserves," and that "no more is charged [for tuition] than is necessary to pay the operating expenses, depreciation and amortization charges." This is not the fact. Concededly, the school was a very profitable institution for many years before its transfer to the corporation; and, although its income has not been materially lessened since, the tuition fees have not been

reduced. And it is also worthy of note that to the school's board of trustees is committed the exclusive authority to prescribe educational standards.

As to the ultimate disposition of the property, if the school should be discontinued, there is nothing to control the trustees except the expression of Miss Creighton's wish, in form an explanatory statement on the minutes, that should the trustees "find it desirable to dispose of the present property and buildings, it is my desire that the proceeds derived from such sale shall be applied, in the first instance, to procuring other property in the city of Englewood, or vicinity, and erecting thereon suitable building or buildings for the continuation of the school;" and that if, on the other hand, the trustees should deem it advisable to discontinue the school, "I then wish to see all moneys, which may be derived from the sale of the properties, turned over to Vassar College, either as a part of the endowment fund of that institution, or as a separate fund, the income from which shall be used to provide scholarships at Vassar for girls from Englewood and its vicinity who may need financial assistance in securing their education, and who shall be selected and appointed in such manner as the trustees of this corporation may stipulate."

Thus it is evident that, basically and fundamentally, the school does not partake of the characteristics of a "nonprofit" enterprise within the design of the statute. The statutory concept of the institution entitled to an exemption is one devoted to charitable, benevolent or religious purposes. The provisos of the exemption statute express this legislative purpose in unmistakable terms. They limit its operation to institutions "not conducted for profit, except that the exemption of the buildings and lands used for charitable, benevolent or religious purposes shall extend to cases where the charitable, benevolent or religious work therein carried on is supported partly by fees and charges received from or on behalf of beneficiaries using or occupying the said building; *provided*, the building is wholly controlled by and the entire income therefrom is used for said charitable, benevolent or

religious purposes." *Pamph. L.* 1931, *p.* 904. The claimant here does not meet this standard. There is an absence of what Mr. Justice Minturn, in *Carteret Academy* v. *State Board of Taxes and Assessments, supra,* termed the statutory essentials constituting the basis for a valid exemption, *i. e.,* "the absence of profit in those interested, and the existence of a status of self-abnegation and sacrifice upon the part of all concerned in the interest of the local public good, very much as was found in *Institute of Holy Angels* v. *Bender,* 79 *N. J. L.* 34." See, also, *Princeton Country Day School* v. *State Board of Tax Appeals,* 113 *Id.* 515.

Here the claimant operates what is essentially an exclusive boarding school. It is not local in character. It is held out as offering superior educational facilities and standards, and social advantages not obtainable in the common schools. Its instructors are compensated accordingly—on a basis fairly comparable with schools offering like advantages and conducted for profit. Its tuition fees are fixed accordingly. It is urged that the granting of the exemption will reduce the *per capita* cost; but it is not suggested that this will alter the fundamental character of the institution, and it is clear that such, in fact, is not the objective. There is not, therefore, in this situation, the *quid pro quo* for the exemption, in the form of a "public work essentially of service to the state, without hope or expectation of remuneration for the service thus performed." *Carteret Academy* v. *State Board of Taxes and Assessments, supra.* The benefit to the community, viewed from the standpoint of the rendition of service that would otherwise be a governmental function and obligation, is merely a trivial incident.

It is urged by prosecutor that "the presence of a desirable private school for girls" is "an important factor in making Englewood popular as a residential suburb," and therefore tends to appreciate realty values; but this is obviously not a ground for exemption. It is not, in any sense of the term, the *quid pro quo* contemplated by the statute. All such exemption statutes are strictly construed; the burden is upon the claimant to establish the right.

In the *Carteret Academy Case, supra,* it appeared that the school was conducted at an annual loss, which was met, in part, by voluntary contributions from friends and patrons; it was also the beneficiary of an endowment fund, and the charter, as amended, declared that the corporate object was fundamentally philanthropic, charitable and educational, and the excess of income over disbursements "should be used to reduce the cost of tuition, to provide free scholarships, or for other educational, philanthropic and charitable purposes." It imposed upon the corporate trustees an obligation not unlike that undertaken by the trustees in the instant case for the disposition of the corporate property in the event that the school should be discontinued. This court observed: "When an institution functions as a business concern, with the economic factor of profit, instead of the legislative conception of philanthropy as the basis for its existence, it *ipso facto* eliminates itself from the legislative purview of exemption." See, also, *Stevens Institute* v. *Bowes,* 78 *N. J. L.* 205; *Montclair* v. *State Board,* 86 *Id.* 497; *Carteret Academy* v. *Orange,* 98 *Id.* 868; *Princeton Country Day School* v. *State Board of Tax Appeals, supra.*

Equality is the basic principle of taxation. Exemption therefrom can be justly sustained only upon the principle that the "concession is due as *quid pro quo* for the performance of a service essentially public, and which the state thereby is relieved *pro tanto* from the necessity of performing, such as works of charity and education, freely and charitably bestowed, as evidenced by the legislation under consideration. Without that concurring prerequisite, an exemption becomes essentially a gift of public funds at the expense of the taxpayer, and indefensible both under our public policy of equal taxation and our constitutional safeguard against illegal taxation." *Carteret Academy* v. *State Board of Taxes and Assessments, supra.* The exemption, to be valid, must of necessity clearly serve a public purpose contemplated by the statute. It results that the challenged judgment is free from error.

Judgment affirmed, with costs.