### DISTRICT OF COLUMBIA v. MT. VERNON SEMINARY.

#### No. 7053.

United States Court of Appeals for the District of Columbia.

Decided Oct. 10, 1938.

Elwood Seal, Vernon E. West, and Chester H. Gray, all of Washington, D. C., for appellant.

John W. Guider and Arthur J. Phelan, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER, Associate Justice, and PROCTOR, Associate Justice of the District Court of the United States for the District of Columbia.

MILLER, Associate Justice.

Appellee, the Mt. Vernon Seminary, is a corporation, organized under the law of the District of Columbia,[1] which operates a private school for girls in the City of Washington. It paid, under protest, taxes and penalties assessed against its real and personal property for the years 1934 and 1935, and brought suit in the court below to recover the amount paid. The case was tried on an agreed statement of facts. Appellant, The District of Columbia, appealed from a judgment in favor of appellee.

The lower court found, from the agreed statement of facts, as follows:

"It is conceded by the defendant that all the property of the plaintiff is used for educational purposes. The receipts of the plaintiff have in recent years exceeded its expenditures, resulting in a net profit to the institution, but none of this has gone to the incorporators nor to any contributor to its endowment."

Appellant concedes that appellee is an educational institution, and that the real and personal property[2] of each educational institution incorporated under the law of the District of Columbia is exempt from taxation, provided such property is not used for private gain and that the institution itself is not conducted for private gain. In other words, appellant presents only one question for determination on this appeal, i. e., what is the proper construction to be placed upon the words "private gain," contained in the statute relating to the exemption from taxation of both real and personal property of educational institutions?[3] In view of appellant's concession, and the position which it has thus taken, it is not necessary for us to decide, and we therefore do not decide, what may

---

[1] Act of March 3, 1901, c. 854, §§ 574–586, 31 Stat. 1280; D.C.Code, 1929, tit. 5, §§ 231–243.

[2] Appellant's position upon this point is clearly stated in its brief in the case of Hazen v. Nat. Rifle Ass'n. (No. 7090), now pending in this court, as follows: "The authorities of the District are in accord with the view that an educational institution is exempt from personal taxes as a scientific institution. It will be noted that in the case of District of Columbia v. Mt. Vernon Seminary, now pending in this Court (No. 7053), which involves the exemption from personal taxes of a school for girls incorporated under the law of the District of Columbia, the District does not contend that an educational institution as such is not exempt from personal taxes, but that the particular school there involved is not exempt because it is conducted for private gain."

[3] Act of July 1, 1902, c. 1352, § 5, 32 Stat. 616; D.C.Code, 1929, tit. 20, § 713: "Property used for educational purposes that is not used for private gain shall be exempt from taxation, and all other property used for educational purposes shall be assessed and taxed as other property is assessed and taxed."

Act of July 1, 1902, c. 1352, § 6, 32 Stat. 620; D.C.Code, 1929, tit. 20, § 755: "The following personal property shall be exempt from taxation.

"First. The personal property of all library, benevolent, charitable, and scientific institutions incorporated under the laws of the United States or of the District of Columbia and not conducted for private gain."

It is interesting to note that under statutes similar to the present one, educational institutions have been held to fall within the category of scientific institutions. " * * * it is a matter of common knowledge that all general educational establishments have universally been known as 'scientific institutions,' and fall naturally and directly within it. A 'scientific institution,' under the language of all civilized countries, means an institution for the advancement or promotion of knowledge, which is the English rendering of 'science.' " Detroit Home and Day School v. Detroit, 76 Mich. 521, 523, 43 N.W. 593, 594, 6 L.R.A. 97. See, also, Board of Trustees v. Outagamie County, 150 Wis. 244, 136 N.W. 619, 2 A.L.R. 465; St. John's Military Academy v. Edwards, 143 Wis. 551, 128 N.W. 113, 139 Am.St.Rep. 1123; Indianapolis v. Sturdevant, 24 Ind. 391; Board of Assessors v. Garland School of Home Making, Mass., 6 N.E.2d 374.

be the scope of each of the two sections of the statute involved or what manner of property may be contemplated by the terms of each of them.

The stipulation of facts contains an elaborate historical statement concerning the genesis of the Mt. Vernon Seminary, and this is discussed in detail in the briefs. It is all immaterial to the issues of the present case, however, and constitutes no evidence that the institution operates for private gain. The important fact is that the appellee corporation was formed and now exists under the law of the District of Columbia.[4] This law provides that: "Such corporation shall hold the property of the institution solely for the purposes of education, and not for the individual benefit of themselves or of any contributor to the endowment thereof." Moreover, it is conceded by appellant that since its incorporation under the law of the District there has been no distribution of profits by appellee to any individual.

Because none of its income can inure to the benefit of any private shareholder or individual, appellee has been granted exemption from Federal income taxes. For the same reason, we conclude that neither is appellee a corporation conducted for private gain nor is its property used for private gain, within the meaning of Sections 713 and 755, Title 20, D.C.Code, 1929. Hence, it is not subject to the payment of taxes on its real and personal property. The term "private gain," as used in the statute, has reference only to gain realized by any individual or stockholder who has a pecuniary interest in the corporation and not, as appellant contends, to profits realized by the institution but turned back into the treasury or expended for permanent improvements. See Commonwealth v. Trustees Hamilton College, 125 Ky. 329, 101 S.W. 405. It is the evident intention of the statute to exempt all institutions, educational in nature, which are not commercial in their purpose.

If it had been intended to tax institutions earning a profit, i. e., having income in excess of expenditures, Congress would have used the word *profit* or the word *gain* instead of *private gain*. Thus, in Dwight School v. State Board of Tax Appeals, 114 N.J.L. 594, 177 A. 875, affirmed, 117 N.J.L. 113, 187 A. 36, where the court was interpreting a New Jersey statute which exempted from taxation only the property of institutions not conducted for *profit*, it was held that the school there involved was liable for tax. But in the present case Congress has recognized the fundamental difference between income earned by an educational institution which is diverted into private use, and similar income which is dedicated to the continued improvement of the institution. The latter is a highly desirable use from the public point of view and equally worthy of tax exemption as the property out of which the income was produced. Cases more nearly analogous to the present are Trinidad v. Sagrada Orden, 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458, and Board of Assessors v. Garland School of Home Making, Mass., 6 N.E.2d 374. In Trinidad v. Sagrada Orden, the Court said that the provisions in the Federal Income Tax Act of 1913, 38 Stat. 172, exempting any corporation "organized and operated exclusively for religious, charitable, scientific, or educational purposes, no part of the net income of which inures to the benefit of any private stockholder or individual," was intended to aid institutions *not conducted for private gain*. It would seem to follow, from the language used by the Supreme Court, that an educational institution is not conducted for private gain if no part of the net income is applied to the benefit of any individual.[5] To hold that the words "pri-

---

4 D.C.Code, 1929, tit. 5, § 234.

5 In Board of Assessors v. Garland School of Home Making, Mass., 6 N.E.2d 374, 381–382, holding a finding that the taxpayer was not operated for private profit to be warranted by the evidence, the court said: "* * * the facts agreed warranted a finding that it was not actually administered for private profit, unless such a finding is precluded by the fact that the corporation itself made a profit. According to these facts not only was distribution of income or profits among the members of the corporation precluded by its by-laws but, as expressly agreed, there was in fact no such distribution. * * * Furthermore, the facts that the taxpayer's activities were carried on with profit to itself, and that such profit was used to increase its capital account through 'the purchase of new furniture and equipment needed for the purposes of the School' and payments on account of principal of mortgages on the real estate used by the school did not require a finding that such activities were carried on for private profit nor, on that ground, preclude a finding that the tax-

rate gain," in the District of Columbia statute, include all profit earned by the institution, regardless of its use, would limit the effect of the statute beyond its clearly expressed intent. The language of an exemption statute must be given its ordinary meaning.[6] Moreover, when the legislative intent is plain and the language used is free from ambiguity, there is no reason for judicial construction of a statute. Dewey v. United States, 178 U.S. 510, 521, 20 S. Ct. 981, 44 L.Ed. 1170; Wood v. White, 68 App.D.C. 341, 97 F.2d 646, cert. denied, 58 S.Ct. 1048, 82 L.Ed. 1541, and cases there cited.

■ Appellant urges, also, that many students in attendance at appellee's seminary are nonresidents of the District of Columbia and, further, that appellee accepts as students only those whose social and financial standing is acceptable to it. However, it is difficult to see what bearing this could have upon the question presented for decision. There is no qualification, expressed or implied, in the statute favoring institutions which cater to all classes of persons or solely to residents of the District of Columbia.[7] While tax exemption statutes should be strictly construed, that principle does not justify the interpolation of such qualifications into a statute, clear in its meaning, for the purpose of defeating the privilege granted.[8]

■ Perhaps it would be wiser for appellee to select its students on a basis of intelligence and previous training exclusively; perhaps not. But that is immaterial to a decision of the case. It is necessary in a democracy that all children, including those of the wealthy and the socially correct, shall be educated. The important consideration is that the school shall measure up to standards of curriculum and pedagogy set by the government.[9] So long as it does—and there is no contention to the contrary in this case—it performs a function which must otherwise be performed by the government and, consequently, comes within the reason for the subsidy which is implicit in a tax exemption.[10]

The policy of the District of Columbia, as expressed in its statutes, is, and should be, to encourage rather than to discourage the entrance into its schools of students from all parts of the country. One of the healthiest manifestations of educational life in the United States is the tendency of students to go from their home states to outstanding educational institutions in other parts of the country. Every great university, college, and preparatory school, including many of those which are state supported, enrolls large numbers of students from other states, and even from other countries. The intermingling of students from all parts of the country is one

payer was a charitable institution." See, also, Appeal of Waynesboro Manufacturers Ass'n, 1 B.T.A. 911, 915.

[6] "Language used in tax statutes should be read in the ordinary and natural sense." Helvering v. San Joaquin Fruit & Investment Co., 297 U.S. 496, 499, 56 S.Ct. 569, 570, 80 L.Ed. 824. See, also, United States v. Kirby Lumber Co., 284 U.S. 1, 3, 52 S.Ct. 4, 76 L.Ed. 131; Woolford Realty Co., Inc. v. Rose, 286 U.S. 319, 327, 52 S.Ct. 568, 569, 76 L.Ed. 1128; Old Colony R. R. v. Commissioner, 284 U.S. 552, 560, 52 S.Ct. 211, 213, 76 L.Ed. 484; Reinecke v. Smith, 289 U.S. 172, 53 S.Ct. 570, 77 L.Ed. 1109; DeGanay v. Lederer, 250 U.S. 376, 381, 39 S.Ct. 524, 525, 63 L.Ed. 1042; United States v. Powell, 4 Cir., 95 F.2d 752, 754; United States v. Missouri Pac. Ry., 8 Cir., 213 F. 169, 173; Bistline v. Bassett, 47 Idaho 66, 71, 272 P. 696, 697, 62 A.L.R. 323; Yakima Fruit Growers Ass'n v. Henneford, 182 Wash. 437, 442, 47 P.2d 831, 833, 100 A.L.R. 435.

[7] See Brattleboro Retreat v. Brattleboro, 106 Vt. 228, 237, 173 A. 209, 212, 213.

[8] In re Mountain State College, Inc.,

117 W.Va. 819, 188 S.E. 480. See, also, Bistline v. Bassett, and Yakima Fruit Growers Ass'n v. Henneford, both supra note 6.

[9] See Pierce v. Society of Sisters, 268 U.S. 510, 534, 45 S.Ct. 571, 573, 69 L. Ed. 1070, 39 A.L.R. 468; Meyer v. Nebraska, 262 U.S. 390, 402, 43 S.Ct. 625, 627, 67 L.Ed. 1042, 29 A.L.R. 1446.

[10] "Public policy in all the states has almost necessarily exempted from the scope of the taxing power large amounts of property used for religious, educational and municipal purposes * * *." Yazoo & Mississippi Valley Ry. v. Adams, 180 U.S. 1, 22, 21 S.Ct. 240, 248, 45 L. Ed. 395. See 2 Cooley, Taxation (4th Ed. 1924) § 653; Lloyd Library and Museum v. Chipman, 232 Ky. 191, 22 S.W.2d 597; People ex rel. Carr v. Alpha Pi, 326 Ill. 573, 158 N.E. 213, 54 A.L.R. 1376; School of Domestic Arts and Science v. Carr, 322 Ill. 562, 153 N.E. 669; Nashville Labor Temple Co. v. Nashville, 146 Tenn. 429, 243 S.W. 78, 23 A.L.R. 807; Miller v. Lamar Life Ins. Co., 158 Miss. 753, 131 So. 282; State ex rel. Board of Commissioners v. Snyder, 29 Wyo. 199, 212 P. 771.

of our surest guarantees of a national culture, which, while preserving the quaint and interesting idiosyncracies of each locality, gives us a common basis of understanding, a common medium of expression, and a vital capacity for that national outlook which is so essential to the preservation and development of a democratic order. It is highly appropriate that the laws of the District of Columbia should recognize, as they do, the fundamental importance of such a policy. It is the nation's capital, seat of the national government, temporary abode of thousands of government employees,[11] mecca of loyal citizens throughout the United States. It is natural and desirable that such children as may, should go to Washington for a part, at least, of their educational experience. Many from the District, also, attend schools, colleges and universities elsewhere. And, even though nonresidents' tuition fees may be exacted,[12] it would be indeed a new principle in the law of taxation if exemption should be limited in favor of institutions which excluded all except residents. Our theory of constitutional government encourages unrestricted trade and other relations between the states.[13] It would be sad evidence of decadence if sanction should ever be given to a contrary policy applied to education in the nation's capital. It should be rather a matter of pride and a subject for encouragement that the District contains educational institutions worthy of high regard and adequate to participate in that interchange of students which constitutes an educational bloodstream for the nation.

We have carefully considered appellant's other contentions and find them, in each case, to be without merit, or immaterial to the determination of the case.

Affirmed.

---

[11] See Ballou v. Kemp, 68 App.D.C. 7, 92 F.2d 556.

[12] See D.C.Code, 1929, tit. 7, §§ 161–165.

[13] Pennsylvania v. West Virginia, 262 U.S. 553, 596, 43 S.Ct. 658, 664, 67 L.Ed. 1117, 32 A.L.R. 300; County of Mobile v. Kimball, 102 U.S. 691, 697, 26 L.Ed. 238; Veazie and Young v. Moor, 14 How., U.S., 568, 574, 14 L.Ed. 545; U.S.Const., Art. 1, §§ 8–10; Art. 4; Fourteenth Amendment, U.S.C.A.Const. Art. 1, §§ 8–10; Art. 4; Amend. 14.