## WASHINGTON CHAPTER OF AMERICAN INSTITUTE OF BANKING v. DISTRICT OF COLUMBIA.

### No. 11509.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 12, 1952.

Decided March 19, 1953.

Mr. James C. Rogers, Washington, D. C., with whom Mr. Nelson T. Hartson, Washington, D. C., was on the brief, for petitioner.

Mr. Harry L. Walker, Asst. Corporation Counsel for District of Columbia, Washington, D. C., with whom Messrs. Vernon E. West, Corporation Counsel, and Chester H. Gray, Principal Assistant Corporation Counsel, Washington, D. C., were on the brief, for respondent.

Before CLARK, PROCTOR and BAZELON, Circuit Judges.

CLARK, Circuit Judge.

This case is before us on a petition for review of a decision of the District of Co-

lumbia Tax Court,[1] upholding an assessment of real estate taxes against certain property owned by petitioner. Petitioner claims that the real estate should be exempt under the provisions of Section 1 of the Act of December 24, 1942,[2] as property owned and operated for educational purposes.

There is no dispute as to the essential facts of the case. Petitioner, the Washington Chapter of the American Institute of Banking (to which we shall refer as "Chapter") is a corporation organized under Subchapter Three (relating to charitable, educational, and religious associations) of Chapter Eighteen, of the Act of March 3, 1901, as amended,[3] having as its principal stated purpose the education of bankers in the theory and practice of banking and in those principles of law and economics that pertain to the banking business. Chapter is one of a number of local study groups affiliated with the American Institute of Banking, a national organization. It carries on an educational program, which includes the teaching of the fundamentals of banking, commercial law, economics, business practice, business accounting, and allied subjects, similar in content and perhaps quality to courses taught in the leading colleges and universities of the Washington area. The instructors at Chapter's "school" are bank officers, certified public accountants, and college professors, on a part-time basis. All students are required to be members of Chapter, membership therein being open, and restricted, to the employees, officers and directors of the private and public banking institutions in the Greater Washington area. There are no educational entrance requirements or entrance examinations; the curriculum of Chapter has not been approved by the Board of Education of the District of Columbia; Chapter has no authority to, and does not in fact, issue diplomas or degrees; and it is not a member of the Middle Atlantic Association of Secondary Schools and Colleges.

Not long after its incorporation, Chapter purchased the land and building for which tax exemption is sought in order to conduct a school there in accordance with the purposes set forth in its certificate of incorporation. The funds for the purchase were furnished by the District of Columbia Bankers Association (an organization of banks and trust companies in the District of Columbia and within a radius of twenty miles thereof, to which we shall refer as "Association") pursuant to an oral agreement, by which Association, in addition to donating the funds for the purchase, also agreed to pay for all operating expenses and repairs connected with the property, in consideration for which Chapter permitted Association to maintain its offices in the "school" building.[4] Although not part of the stated consideration, it is not unreasonable to assume that Association was induced to enter into the agreement because of whatever benefits it might obtain by virtue of the fact that the prime purpose of Chapter, as petitioner freely admitted, was to render its graduates more efficient in their services to the member banks of Association.

On May 14, 1951, Chapter applied to the District of Columbia, for an exemption from real estate taxes with respect to the property here involved upon the ground that it was used for "educational purposes". Later that year, an assessment was made against the real estate, and the exemption was denied. Chapter appealed from the assessment to the District of Columbia Tax Court, and petitioned this court for review of the adverse decision rendered below.

The Act of December 24, 1942, reads in pertinent part as follows:

"* * * That the real property exempt from taxation in the District of

---

1. Formerly the Board of Tax Appeals of the District of Columbia. See Sec. 5 of the Act of July 10, 1952, P.L. 493 (82nd Cong.), U.S.Code Congressional and Administrative News 1952, p. 522.

2. 56 Stat. 1089 (1942) Title 47, Sec. 801a of the D.C.Code (1951 ed.)

3. 31 Stat. 1189, 1283 (1901), Title 29, Ch. 6 of the D.C.Code (1951 ed.)

4. At the time this action was begun, Association occupied two rooms for general office use, and Chapter used the remainder of the building for the conducting of its educational program.

Columbia shall be the following and none other:

"Section 1. (a) * * *.

"(j) Buildings belonging to and operated by schools, colleges, or universities which are not organized or operated for private gain, and which embrace the generally recognized relationship of teacher and student.

* * * * * *

"(r) (1) Grounds belonging to and reasonably required and actually used for the carrying on of the activities and purposes of any institution or organization entitled to exemption under the provisions of this Act."

The decision of the Tax Court in affirming the validity of the assessment was reached in spite of holdings that Chapter was neither organized nor operated for private gain and that it embraced the generally recognized relationship of teacher and student. The Tax Court held the use by Association of some of the space in the building for its own purposes, and the use by Chapter of several of the rooms for social and other non-educational and *extra curricular* activities, to be incidental and therefore immaterial to the issue of tax exemption, and it further said that non-accreditation with the various educational supervisory bodies of the area did not destroy Chapter's claim to being a "school" and would not defeat exemption, if the property was otherwise exempt. Denial of the exemption was based on one single ground: that Chapter does not render a service which relieves the District of Columbia of a burden it would otherwise have to assume and that it therefore fails to come within the intended purpose of the statute.

▆▆▆ The precise question before this court, then, is whether the Tax Court was justified in reading into the statute this requirement, for which, at first blush, there

appears to be no basis in the Act itself. We think that the Tax Court was not in error.

Exemptions from taxation are strictly construed against those claiming the exemption,[5] even if the claimant is a charitable or educational institution,[6] because such exemptions are in the nature of a renunciation of sovereignty, and are at war with sound basic tax philosophy which requires a fair distribution of the burden of taxation.[7] As expressed in 2 Cooley, The Law of Taxation, § 672, at p. 1403:

"An intention on the part of the legislature to grant an exemption from the taxing power of the state will never be implied from language which will admit of any other reasonable construction. Such an intention must be expressed in clear and unmistakable terms, or must appear by necessary implication from the language used, for it is a well-settled principle that, when a special privilege or exemption is claimed under a statute * * * it is to be construed strictly against the property owner and in favor of the public. This principle applies with peculiar force to a claim of exemption from taxation."

Examining the statute here involved in the light of these general principles, we are unable to conclude that the Act sets up or contemplates a scheme of tax exemption broad enough to encompass organizations as limited in scope, as narrow in purpose, and as devoted to the improvement of a purely private group, as Chapter appears to be.

A tax exemption of this character can justly be sustained only upon the ground that the concession is due as a quid pro quo for the performance of a service essentially public, which the state is thereby, at least partially, relieved pro tanto from the neces-

5. Hale v. State Board of Assessment, 1937, 302 U.S. 95, 58 S.Ct. 102, 82 L.Ed. 72; Sutherland, Statutory Construction, § 6702 (3rd ed. 1943).

6. 34 A.L.R. 635, and cases there cited.

7. See generally, Hebrew Home for the

Aged v. District of Columbia, 1944, 79 U.S.App.D.C. 64, 142 F.2d 573; Combined Congregations of D. C. v. Dent, 1943, 78 U.S.App.D.C. 254, 140 F.2d 9; National Rifle Ass'n of America v. Young, 1943, 77 U.S.App.D.C. 290, 134 F.2d 524.

sity of performing.[8] Without that concurring prerequisite, an exemption becomes virtually a gift of public funds, at the expense of the taxpayer.[9]

Education is one of the most basic and consuetudinary functions of government. The state may discharge that obligation by providing all of the educational processes on its own, or it may impliedly permit or encourage private organizations and institutions to carry on such functions. Real property used in the furtherance of these objectives is, then, in fact, devoted to a quasi public purpose and tax exemption is granted as a quid pro quo for the assumption of that portion of the function of the state.[10] But for such a purpose and but for the fact that a service is rendered which relieves the public of burdens and obligations which might reasonably be assumed by the state, the exemption could neither be justified nor sustained.[11] This rule has found application, expressly or impliedly,

and explanation,[12] in many jurisdictions,[13] including our own.[14]

Congress, in enacting the exemption statute, undoubtedly was aware of the rule and of the many reasons for its existence. Moreover, the legislators did not say, as petitioner argues, that every institution which (1) is not organized for profit and (2) embraces the requisite relationship of teacher and student, thereby *ipso facto*, becomes an educational institution performing functions it would normally be incumbent upon the government to perform; on the contrary, they made application of these two conditions contingent upon compliance with the basic and fundamental prerequisite that the applicant have the status of a school, college or university. In our opinion, an organization does not acquire such status, within the meaning of the clause here in question, unless it is able to demonstrate that it renders a service which the public otherwise either would have to assume or at least reasonably might assume.

8. Hazen v. National Rifle Ass'n of America, 1938, 69 App.D.C. 339, 101 F.2d 432; District of Columbia v. Mt. Vernon Seminary, 1938, 69 App.D.C. 251, 100 F.2d 116.

9. Dwight School of Englewood v. State Board of Tax Appeals, 1935, 114 N.J.L. 594, 177 A. 875, affirmed 1936, 117 N.J.L. 113, 187 A. 36.

10. Application of Thomas G. Clarkson Memorial College, 1948, 191 Misc. 621, 77 N.Y.S.2d 182.

11. See Lloyd Library & Museum v. Chipman, 1929, 232 Ky. 191, 22 S.W.2d 597.

12. It is true that some of the cases supporting the rule involved foreign corporations. But the reason for denial of the exemption in such cases was not that the corporations were organized or created in another state but that such corporations failed to provide educational services in the state where exemption was sought and consequently failed to relieve that state and its people of burdens which might otherwise be imposed on them. Methodist Book Concern v. Galloway, 1949, 186 Or. 585, 208 P.2d 319. Obviously, if a domestic corporation performs no such services and provides no such relief, it cannot claim tax exemption with better justification than could a foreign corporation.

13. Lane v. Wilson, 1938, 103 Colo. 99, 83 P.2d 331; Legat v. Adorno, 1951, 138 Conn. 134, 83 A.2d 185; Congregational Sunday School v. Board of Review, 1919, 290 Ill. 108, 125 N.E. 7; Missouri Pac. Hospital Ass'n v. Pulaski County, 1947, 211 Ark. 9, 199 S.W.2d 329; Layman Foundation v. City of Louisville, 1929, 232 Ky. 259, 22 S.W.2d 622; City of Cincinnati v. Commonwealth ex rel. Reeves, 1943, 292 Ky. 597, 167 S.W.2d 709; Morgan v. Atchison, T. & S. F. Ry. Co., 1924, 116 Kan. 175, 225 P. 1029, 34 A.L.R. 625; Massachusetts General Hospital v. Inhabitants of Belmont, 1919, 233 Mass. 190, 224 N.E. 21; City of Detroit v. Detroit Commercial College, 1948, 322 Mich. 142, 33 N.W.2d 737; State v. Northwestern Vocational Institute, 1951, 232 Minn. 377, 45 N.W.2d 653; Carteret Academy v. State Board of Taxes and Assessment, 1926, 102 N.J.L. 525, 133 A. 886, affirmed 1927, 104 N.J.L. 165, 138 A. 919; Bloch v. Board of Tax Appeals, 1945, 144 Ohio St. 414, 59 N.E.2d 145; Lutheran Hospital Ass'n v. Baker, 1918, 40 S.D. 226, 167 N.W. 148; Nashville Labor Temple v. City of Nashville, 1922, 146 Tenn. 429, 243 S.W. 78, 23 A.L.R. 807; Smith v. Feather, 1950, 149 Tex. 402, 234 S.W.2d 418.

14. See District of Columbia v. Mt. Vernon Seminary, supra note 8; Hazen v. National Rifle Ass'n of America, supra note 8.

How does Chapter measure up to that test? The prime objective of Chapter is not the education or elevation of the public, or of some reasonable cross-section thereof, but its main, indeed its sole, purpose is, and since incorporation has been, the training of bank employees so as to render them more efficient and hence more valuable to the member banks of Association. The benefits to the District of Columbia, if any, are incidental and so inconsequential that it is utterly unrealistic to argue that Chapter relieves the state of a burden it might reasonably assume, or that it performs what might be regarded as an essentially public or quasi public function.

Petitioner relies heavily upon District of Columbia v. Mt. Vernon Seminary,[15] where we allowed an exemption notwithstanding that the school was not open to all who might apply but restricted to a certain, well-defined group. That case, however, is clearly distinguishable from the case at bar, since the seminary, far from making admission contingent upon prior affiliation with an organization, association, or business entity, merely followed a policy of accepting as students only those with a certain social and financial standing. That, of course, is a qualification frequently associated with certain types of educational institutions, and appears wholly reasonable from the point of view of tax philosophy— the one in the instant case does not. When the right to admission depends upon the fact of voluntary association with a particular organization primarily private in character, such as a commercial or industrial enterprise or a labor union,[16] rather than on some qualification which involuntarily affects or may affect the whole people, then a distinction is made which concerns not the public at large, and there is no relief of the public burden in the generally accepted sense. The public is interested in, and grants a tax exemption for,

the education of its members, because they are men, women, and children, not because they happen to be affiliated with the District of Columbia Bankers Association.

Petitioner fails to qualify for exemption under the statute, and the decision of the Tax Court must be

Affirmed.

---

15. Supra note 8.

16. See, e. g., City of Detroit v. Detroit Commercial College, supra note 13 (business college providing specialized instruction); Textile Research Institute v. Princeton Tp., 1946, 50 A.2d 829, 25 N.J.

Misc. 94 (institute benefitting textile industry exclusively); Lane v. Wilson, supra note 13 (labor union); County Assessor v. United Brotherhood of Carpenters & Joiners, 1949, 202 Okl. 162, 211 P.2d 790 (labor union).