DISTRICT OF COLUMBIA
v.
NATIONAL WILDLIFE FEDER-
ATION.
No. 11754.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 11, 1954.

Decided March 4, 1954.

Petition for Rehearing In Banc
Denied April 7, 1954.

Mr. Henry E. Wixon, Assistant Corpo-
ration Counsel for the District of Co-
lumbia, with whom Messrs. Vernon E.
West, Corporation Counsel, and Chester
H. Gray, Principal Assistant Corporation
Counsel, were on the brief, for petition-
er. Mr. Harry L. Walker, Assistant Cor-
poration Counsel, also entered an appear-
ance for petitioner.

Mr. Andrew T. Altmann, Washington,
D. C., with whom Messrs. Charles V.
Imlay and George A. Hospidor, Washing-
ton, D. C., were on the brief, for re-
spondent. Mr. Carl H. Imlay, Washing-
ton, D. C., also entered an appearance for
respondent.

Before BAZELON, FAHY and
WASHINGTON, Circuit Judges.

FAHY, Circuit Judge.

The District of Columbia petitions us
to overturn a decision of the Tax Court
of the District of Columbia which ad-

judged erroneous an assessment on the personal property of the National Wildlife Federation for the fiscal year July 1, 1952, to June 30, 1953, and determined that the Federation is entitled to a refund of the tax paid.

■ The Tax Court, finding the Federation to be a scientific institution incorporated under the laws of the District of Columbia and not conducted for private gain, held its personal property in question exempt under the provisions of § 47-1208, D.C.Code (1951).[1] Without question the Federation is incorporated under the laws of the District of Columbia. Nothing presented to us indicates error in the finding that the Federation is not conducted for private gain. Moreover, that the Federation is a scientific institution is hardly disputable. As to this, however, we outline the facts which support the correctness of the Tax Court's finding.

According to its constitution and by-laws the objects of the Federation are to organize all agencies, societies, clubs and individuals interested in the restoration, conservation and scientific management of wildlife into a unified agency to secure public recognition of the needs and values of wildlife resources, to develop a comprehensive program based upon scientific study and technical research for the advancement and conservation of wildlife and, to the same end, to present to the public pertinent facts, scientific and research discoveries and information. The provisions of its certificate of incorporation state similar purposes. The members of the Federation are corporations, associations and groups throughout the country interested in the protection of wildlife, the dissemination of wildlife information, and the study of wildlife and related activities. The headquarters of the Federation is in the District of Columbia where there are 55 full time employees. The Federation's funds are raised primarily through the sale of stamps depicting flora and fauna of wildlife. Funds are also raised through the sale of its own publications. Headquarters in the District of Columbia provides a service for affiliated organizations in 45 states. There is a field service with a field director who travels throughout the country and organizes and strengthens affiliations with the Federation and provides conservation assistance to states and territories. The Federation has an education committee which grants fellowships to universities for conservation programs. It has a grant-in-aid program for encouraging affiliates to present local programs connected with the conservation of the nation's natural resources. A book library and a film library are maintained at headquarters and may be used by interested members of the public but in fact are used primarily by the staff. Lecturers are made available by the Federation; and it publishes a publication called "Conservation News", with educational and scientific material, which it mails free of charge to about 5,000 persons and groups.

From the foregoing it is plain, and the contrary is not seriously advanced, that the Federation is a scientific institution. See District of Columbia v. Mt. Vernon Seminary, 69 App.D.C. 251, 252, 100 F.2d 116, 117, note 3; I.T. 2546, IX-2 Cum.Bull. 122; Webster's International Dictionary, 2d ed., unabridged, p. 2238, p. 2985 "zoology".

[2-4] The District of Columbia nevertheless contests the exemption on the ground that the activities of the Federation within and for the benefit of the District are not a material part of its total work and do not relieve the local government of a burden it otherwise would have. It is true the local activities of the Federation by no means predominate. The employees at headquarters here devote but a small part of their time to lo-

---

1. § 47-1208, D.C.Code (1951), exempts "* * * The personal property of all library, benevolent, charitable, and scientific institutions incorporated under the laws of the United States or of the District of Columbia and not conducted for private gain."

cal benefits. No large amount of fish and wildlife resources in the District of Columbia enlists the concern of the Federation. Furthermore, only 831 names on a mailing list of over half a million are located here and only about 150 local residents receive the publication "Conservation News". While its facilities are to a degree available to and are in fact used by District residents and schools, only in the sense that its over-all activities are conducted from its headquarters can the Federation be said to be primarily local.

Accepting, therefore, as a fact that the Federation's District activities are relatively minor when measured in terms of purely local benefits, we must reject the District's legal conclusion that this forecloses the exemption. While of course the statute granting the exemption is due to a Congressional purpose to aid the public, this does not require a scientific institution to show that it performs a service of substantial character which otherwise the District government, or any other, would actually assume. Since the Federation is incorporated under the laws of the District of Columbia, is not conducted for private gain, and is truly a scientific institution, it qualifies for the exemption under the statute. District of Columbia v. Catholic Education Press, 91 U.S.App.D.C. 126, 127, 199 F.2d 176, 177, certiorari denied, 344 U.S. 896, 73 S.Ct. 276, 97 L.Ed. 693.

The contrary view we think is due to a misunderstanding of the postulate that an exemption is a *quid pro quo* for public service. Colorable support for the misunderstanding is found in previous opinions of this court, but we think the District reads too much into their language. In support of its position the District refers to the following cases: Hazen v. National Rifle Ass'n of America, 69 App. D.C. 339, 101 F.2d 432; District of Columbia v. Mt. Vernon Seminary, 69 App. D.C. 251, 100 F.2d 116; Government Services v. District of Columbia, 88 U.S. App.D.C. 360, 189 F.2d 662, certiorari denied, 342 U.S. 828, 72 S.Ct. 51, 96 L. Ed. 626; Washington Chapter, Etc. v.

District of Columbia, 92 U.S.App.D.C. 139, 203 F.2d 68.

In Hazen v. National Rifle Ass'n of America exemption was sought on the ground, among others, that the property was used for educational purposes. The court found the educational phase of the Association's activities incidental and collateral to its social, recreative, promotional and propaganda services, these constituting its major reasons for existence. True, the court said "the necessity for governmental subsidy or immunity which is implicit in tax exemption— upon the theory that the government is relieved of its burdens—fails in the present case." We think this statement of the theory of tax exemption is not to be read as necessitating a showing that government is in fact relieved in a particular case of something which it would then do, or do at any particular time. This is not to say, however, that in determining whether the institution is scientific, when exemption is claimed on that ground, the court does not examine its objects and activities in light of the purpose of the legislature to aid and encourage by tax exemption enterprises performing a public or quasi-public service.

In District of Columbia v. Mt. Vernon Seminary, the Seminary was found to be an educational institution not conducted for private gain. The exemption was upheld notwithstanding the educational advantages of the Seminary were for the benefit of many non-residents and only for students whose social and financial standing were acceptable. The court emphasized the fundamental importance of a policy which tends to draw to the nation's capital students from localities throughout the county. It is true the court indicated that the school "performs a function which must otherwise be performed by the government and, consequently, comes within the reason for the subsidy which is implicit in a tax exemption". Again, however, this statement cannot be read, in the context of the opinion, as holding that it is necessary to prove a definitely ascertainable *quid pro quo*, much less one primarily to the

particular government which grants the exemption.

In Government Services v. District of Columbia an exemption was sought on the premise that the organization was exclusively charitable.[2] Finding the premise erroneous the court denied the claim. The opinion seeks no support from a *quid pro quo* theory.

In Washington Chapter, Etc. v. District of Columbia, the remaining case in this jurisdiction relied upon, the decision denied a real estate exemption sought under § 47–801a, D.C.Code (1951). The court discussed rather fully and indicated approval of a *quid pro quo* theory; but the opinion shows that the theory supports the exemption of property used for an educational purpose because that is a quasi-public purpose—a *quid pro quo*. It "relieves the public of burdens and obligations which might reasonably be assumed by the state", or, as the opinion also states, "renders a service which the public otherwise either would have to assume or at least reasonably might assume."

Another way of stating the matter is that an exemption of course may not create inequality in taxation between persons or institutions of a private character by giving the property of one, and not the other, its benefit. But it may aid and encourage a public or quasi-public service through designated types of organizations, such as library, benevolent, charitable or scientific institutions, see n. 1, supra, conducted for no private gain. Using the provision applicable to the instant case as illustrative, the public benefit which the government "reasonably might assume" is sufficiently proved when the activity is in fact scientific and private gain is excluded.[3]

This is the view reflected in the last previous case on the subject decided by this court, District of Columbia v. Catholic Education Press, supra. The opinion omits all reference to the *quid pro quo* theory, notwithstanding it was urged, though not in the detail or with the same precision as now. The court proceeds on the assumption that the scientific character of the institution, accompanied with the other statutory requisites, calls the exemption into effect. We reaffirm that position. We add that the work of the Federation, which has been described, not only places it literally in the category of scientific institutions but is of a public character. Not only is there the absence of private gain but there is the presence of public benefit through the preservation and development of natural resources of wildlife within the nation.

The District of Columbia also contends that the Tax Court erred in admitting evidence of the Federation's activities subsequent to July 1, 1952, since the status of the property in relation to the exemption is that which it had on July 1; but examination of the evidence as a whole demonstrates to us that the Tax Court was justified in finding that as of July 1, 1952, the Federation was a scientific institution, incorporated under the laws of the District of Columbia, and not conducted for private gain.

Affirmed.

---

2. Alternatively, Government Services sought exemption as a civic league operated exclusively for the promotion of social welfare. The court also rejected this claim.

3. If a religious exemption, see § 47–801a, D.C.Code (1951), were involved it could hardly be thought it must be denied because the government could not directly engage in the establishment of religious institutions.