**The WASHINGTON THEATRE CLUB, INC., Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 6953.

District of Columbia Court of Appeals.

Argued May 1, 1973.

Decided Nov. 21, 1973.

Richard J. Medalie, Washington, D. C., with whom Charles T. Duncan and Jessie M. Harris, Washington, D. C., were on the brief, for appellant.

Henry E. Wixon, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Washington, D. C., was on the brief, for appellee.

Before FICKLING, KERN and GALLAGHER, Associate Judges.

GALLAGHER, Associate Judge:

The Washington Theatre Club, Inc., (hereinafter referred to as Theatre Club) is a professional resident theatre and drama school in this city. In 1969, appellant applied to the Property Assessment Division, District of Columbia Department of Finance and Revenue, for an exemption from real estate taxation on the basis that it was an educational institution within the meaning of D.C.Code 1973, § 47–801a(j).[1] The application was denied and appellant brought this action in the Tax Division of the Superior Court appealing the assessment of the tax.[2]

\* \* \* \* \*

(r)(1): Grounds belonging to and reasonably required and actually used for the carrying on of the activities and purposes of any institution or organization entitled to exemption under the provisions of § 47–801a . . . .

---

1. That section and its companion section provide:

§ 47–801a:

The real property exempt from taxation in the District of Columbia shall be the following and none other:

(j): Buildings belonging to and operated by schools, colleges, or universities which are not organized or operated for private gain, and which embrace the generally recognized relationship of teacher and student.

2. D.C.Code 1973, § 11–1201.

At trial appellant introduced extensive evidence to bring itself within the ambit of Section 47–801a(j) which requires a showing by substantial evidence that the taxpayer (1) is not organized or operated for private gain; (2) has a generally recognized relationship of teacher and student; and (3) is a school, college or university. On the first two issues the trial court found that appellant satisfied the letter and spirit of the statute. On the third issue, however, the trial court held that appellant had not met its burden of showing that its primary objective was educational.

The court arrived at this conclusion by applying the general rule that "[e]xemptions from taxation are [to be] strictly construed against those claiming the exemption," Washington Chap. of American Inst. of Banking v. District of Columbia, 92 U.S.App.D.C. 139, 141, 203 F.2d 68, 70 (1953). Drawing upon the same case, the court found that education must be the *prime* objective of those claiming exemption, *id.* at 142, 203 F.2d 68, 72, but that it need not be their exclusive objective.[3] These standards are not disputed by the parties. In applying them to the evidence before it, the court concluded that appellant's primary activity was the operation of a professional theatre and not an educational institution.

The Theatre Club was incorporated in the District of Columbia in 1963 as a nonprofit organization, which it continues to be. It is located in a two-story structure, formerly a church, which has been converted into a theatre. The first floor consists of a large room, which serves as a work area and classroom, an art gallery, a small storage area, a dressing room and a box office. The second floor consists of a theatre, a costume workshop, a light room, and a stage manager's booth.

The Theatre Club sponsors the production and presentation of plays, educational activities, an art gallery offering paintings for sale, and provides a chamber for music and jazz programs. An admission fee is charged for the theatre productions and subscriptions are solicited.

It offers various educational courses in acting techniques, dance, scene study, speech, improvisation, creative dramatics, introduction to acting, intermediate acting, advanced acting, playwriting, mime, directing, vocal development, movement and other similar courses relating to theatrical production on a semester basis in three different programs denominated Adult Workshop, Teenage Theatre and Junior Stage. It accommodates approximately 800 students during the course of a year, and at the time of trial the enrollment was approximately 150 students. There is a full-time director and an assistant director, and it also normally employs 10 teachers (part-time), many of whom hold advanced academic degrees. It also has training arrangements with various accredited schools by which students from these schools receive credit at their home schools.

Appellant offered evidence to show that a local theatre club, The Washington Drama Society (Arena Stage), is engaged in similar activities and under a formal opinion of the Corporation Counsel in 1962 was exempted from the payment of real property taxes pursuant to Section 47–801a(j).

The principal question is whether the trial court utilized incorrect standards in arriving at its ruling that the primary use of appellant's facilities was not for educational purposes and that it was therefore

---

3. This conclusion is derived from a complete reading of Section 47–801 which also provides in D.C.Code 1973, § 47–801b that:

If any building or any portion thereof, or grounds belonging to and actually used by any institution or organization entitled to exemption under the provisions of sections 47–801a . . . are used to secure a rent or income for any activity other than that for which exemption is granted such building, or portions thereof, or grounds, shall be assessed and taxed.

*See* Hazen v. National Rifle Ass'n of America, 69 U.S.App.D.C. 339, 343, 101 F.2d 432, 436 (1938).

not entitled to a real property tax exemption under the statute (§ 47–801a(j)). Put affirmatively, the court concluded, on the contrary, that the facilities were being employed primarily for the purpose of operating a professional theatre.

It was appellant's position in the trial court, and is here, that the theatrical productions are so interconnected with its educational activities as to be inseparable from them. Testimony was elicited to show the value of the theatre to the school. There was uncontradicted testimony that there is a direct relationship between the theatre and the school in that the school uses the theatre facilities for teaching purposes and in providing the kinds of instruction which the theatre gives. Pupils are attracted to the school by the opportunity to observe theatre in action. One college course in theatre management uses the Theatre Club as a laboratory. The school makes use of the theatre productions in that students assist with the productions in varying degrees. Teachers use the theatre facilities in the presentation of classroom instruction in order to take students beyond the theoretical which would be impossible without the facilities of the theatre. Two teachers testified that they would not teach at the Theatre Club were it not for the presence of the theatre and the laboratory atmosphere provided. There was testimony that several students appear in appellant's major productions and that others are involved in supportive ways. It was shown that 70 former students are now engaged in professional theatre in various capacities. Finally, it was adduced at trial that appellant's theatre productions were not presented to make a profit but rather to encourage creativity and allow an outlet for theatrical expression that would not necessarily be commercially successful.

In rejecting appellant's contention relating to the interconnection of the educational and theatre activities the trial court stated that while "dramatic productions may be educational in nature" and "the presentation of the dramatic arts may be morally and educationally uplifting" it could not "find a 'generally recognized relationship of teacher and student' existing between [appellant's] paying audience and its actors on the stage." But this was not appellant's contention. Instead, as we have related, the position was that the presence of a going theatre in the building with the drama school, and the interconnection of the personnel and physical facilities, was important to the success, including the financial viability, of the school.

Additionally, the court avowedly placed considerable weight on the fact that appellant "spend[s] nearly five times more money for its professional theatre productions than it does for the school" and "the productions also generate over five times more income than the school tuitions."[4] If appellant were a profit-making organization these financial aspects would doubtless be entitled to the telling significance attributed by the court. But since it is a nonprofit-making organization, we are left with the conclusion that this factor was given undue importance in resolving the principal issue in this case. We do not wish to be understood to say that it was not relevant along with other considerations, but it is apparent that it was treated as a crucial factor, which we think was unwarranted on this record.

We are of the opinion that the trial court (a) misconstrued appellant's contention concerning the material evidence on the vital interconnection of the school and theatre, which necessarily must have resulted in the court's erroneous evaluation of important evidence; and, consequently, this could well have affected its decision[5] and (b) erred in giving undue importance to the ratio of expenditures and income as

4. It also stressed that the majority of the employees are involved with the theatre productions rather than with the school.

5. *See*, *e. g.*, Fromberg, Inc. v. Thornhill, 315 F.2d 407, 409 (5th Cir., 1963).

between the theatre and the school, and thereby used an erroneous standard in evaluating material evidence.[6] Being left with the opinion that the trial court committed substantial error in evaluating the evidence in these important respects, and that this might well have been crucial to its decision, we have no alternative but to remand for further proceedings. In doing so, we do not require that there be a new trial[7] but, rather, that the trial court reconsider the evidence and arguments of the parties in the light of this opinion.

■ Since we are remanding, there is something additional which should be said. The record indicates that another organization of a similar nature (Arena Stage) has been given tax exempt status by the government, unlike here, and that there may be so substantial difference between the operation of these two organizations. While taxpayers cannot avoid liability for a proper tax by showing that others have been treated leniently or erroneously,[8] yet equal treatment within a class is fundamental to an equitable administration of tax laws. *See, e. g.,* Hillsborough T. P. v. Cromwell, 326 U.S. 620, 623, 66 S.Ct. 445, 90 L.Ed. 358 (1946); Craghill v. Van Riswick, 8 App.D.C. 185, 214–215 (1896),

rev'd on other grounds, 168 U.S. 611, 18 S.Ct. 217, 42 L.Ed.2d 599 (1898).

During the remand period the government would do well to assess the entire situation administratively to determine whether, internally, it is taking a position in respect to the tax exempt status of one theatre-school organization which is contrary to its position on another organization similarly situated. It is apparent from this record that The Washington Drama Society (Arena Stage) is, as a result of a formal opinion of the Corporation Counsel, being given a tax exemption on its real property and, yet, it is the position of the government that appellant, who appears to be a like organization, is not entitled to this exemption. We do not have before us now the issue of unequal tax treatment within a class. This proceeding is not the traditional class action suit as in District of Columbia v. Green, D.C.App., 310 A.2d 848 (October 9, 1973). But if there is no substantial difference between the operation of these two organizations, it would amount to an unfair denial of equal tax treatment to appellant. This, if true, should not be permitted.[9] This is why we consider that the government should review its actions as they relate to the two organizations during the remand period to

6. *See, e. g.,* United States v. Singer Manufacturing Co., 374 U.S. 174, 194, n. 9, 83 S.Ct. 1773, 10 L.Ed.2d 823 (1963).

7. If on the other hand, it appears that the reception of additional evidence is in the interest of a fair deposition this may be permitted by the trial court.

8. International Business Machines v. United States, 343 F.2d 914, 919, 170 Ct.Cl. 357 (1965), cert. denied, 382 U.S. 1028, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966).

9. We do not say that this issue was actually before the trial court for resolution. We note, however, that based upon evidence before it, the court gave the problem some consideration and stated that there were differences between the two but did not enumerate them. Later in its opinion, the court adverted in passing to what it considered a distinction between the two organizations but we do not consider this instance to result in a considered evaluation of the nature and operation of the

two organizations. The distinction drawn was that in granting Arena Stage the exemption the Corporation Counsel, in his written opinion, adverted to an agreement which Arena Stage had with Actor's Equity Association allowing students to participate in stage productions, whereas such participation by appellant's students, said the court, is "minimal at most." The court made no allution to the *actual practice* by Arena Stage in this respect, which appears to be much the same. As we have indicated, the evidence here is that appellant's students participate to some extent in the theatre productions. We are therefore unable to discern a concrete basis for the distinction.

Parenthetically, we note that, in his testimony, the Chief of the Property Assessment Division pointed out that Arena Stage had agreements with George Washington University and American University. Appellant introduced evidence that it, too, had such agreements though with different schools.

determine whether from its standpoint it is proceeding fairly in its administration of the tax statute. As to whether it is, we do not now reach the question nor intimate an opinion.

Remanded for further proceedings not inconsistent with this opinion.